*In re* MARRIAGE OF MICHAEL ALAN APPERSON, Petitioner-Appellee, and LINDA SUSAN APPERSON, Respondent-Appellant.

Fourth District No. 4—90—0665

Opinion filed June 26, 1991.

Michael B. McClellan, of Dodd & McClellan, P.C., of Champaign, for appellant.

Auler Law Offices, P.C., of Urbana, for appellee.

JUSTICE McCULLOUGH delivered the opinion of the court:

Respondent Linda Susan Apperson appeals from an order granting permanent custody of her two minor sons, Timothy and Michael, to petitioner, Michael Alan Apperson. Respondent raises the following issues for our consideration: (1) whether the trial court abused its discretion in placing the two boys with petitioner; and (2) whether the trial court erred in finding one of the minors had no standing to challenge the role of the guardian *ad litem* in the proceedings. We affirm.

The record shows petitioner and respondent were granted a dissolution of marriage in Missouri on December 6, 1984. The judgment of dissolution granted the parties joint custody of Timothy, then age 7, and Michael, then age 10, with respondent having "primary possession of the children." After respondent moved to Illinois, the Missouri judgment of dissolution was established in the Champaign County circuit court, and the circuit court assumed jurisdiction over the custody of the two minors on March 7, 1989.

Both parties filed a separate petition to modify the custody order, with each requesting sole custody of the minors. After the petitions were filed, the parties agreed to allow the minors to live with peti-

tioner in Missouri beginning in August 1989. Dr. Jean Gillespie, a school psychologist who had counseled the minors, had previously recommended the minors be allowed to live with petitioner in Missouri. A written order evidencing the parties' agreement was entered on November 2, 1989. The order stated in pertinent part that (1) the minors shall live with petitioner in Missouri from August 21, 1989, until the issue of permanent custody is decided at a court hearing held no later than June 30, 1990; (2) the minors shall be interviewed twice during the 1989-1990 school year by Dr. Gillespie and three times by the guardian *ad litem*; (3) petitioner shall provide respondent with complete access to information regarding the minors' schooling and medical care in Missouri; (4) each party shall provide opportunities and not discourage the minors' interest in religious training or activities; and (5) each party shall supervise the minors' school work and discourage the use of alcohol or tobacco.

Hearings on the petitions to modify custody were held in July 1990. Respondent testified the minors were not properly supervised while living with petitioner as evidenced by poor grades, Timothy's loss of weight, the lack of religious experiences, and the lack of appropriate social acquaintances. Respondent explained that Timothy's grades dropped because he was playing basketball too much and associating with the wrong group of children, which she characterized as "juvies" or juvenile delinquents. Respondent further testified Timothy lost 20 pounds while he lived with petitioner. Respondent also testified her sons enjoyed going to church and they did not go while they lived in Missouri because petitioner was not interested in church. Respondent stated she did not force her children to go to church but she did have to get them up on Sunday mornings.

Respondent testified that while she worked the 3 p.m. to 11 p.m. shift at a local company in Champaign, if her sons lived with her on a permanent basis, they would be supervised by her sister and mother. Further, respondent stated both minors had friends in Champaign as well as relatives and they would be exposed to religious activities as desired.

Petitioner testified Timothy's poor grades were due to his interest in a girl, the fact he was playing too much basketball, and his failure to bring his homework home. Petitioner stated he planned on supervising Timothy's school work more closely by denying him the opportunity to engage in extracurricular activities, like basketball, until his grades improved. Petitioner attributed Timothy's weight loss to his son's playing basketball and stated it was not unusual for a 12-year-old to grow a great deal in a short time. Petitioner testified he did

not take the minors to church on a regular basis because they had no desire to go to church and he was not going to force them to go as respondent did.

Both Timothy and Michael expressed a strong desire to live with their father before August 1989. Their reasons for not wanting to live with respondent included her violent behavior toward them, abusive language, and their dislike for respondent's then new husband, David Jordan. Both minors also reported respondent and Jordan often exhibited violent behavior toward each other in their presence. After their school year in Missouri, Michael continued to state he wanted to live with his father, while Timothy stated he wanted to live in Illinois with respondent, whom he described as "a lot nicer." Timothy told the trial judge he wanted to live in Illinois because all of his friends and cousins were here. Timothy admitted that three to four days before the hearing, he had stated he wanted to live with his father but changed his mind because his mother had "gotten a lot nicer." He also stated his mother told him she would buy him new Reeboks, a basketball hoop for the driveway, and a dog if he stayed in Illinois.

Dr. Gillespie testified she interviewed the two minors on many occasions, including two weeks before the hearing and on the day of the hearing. At the meeting two weeks before the hearing, both children told Gillespie they wanted to live with their father. On the day of the hearing, Timothy told Gillespie he wanted to live in Illinois even if Michael wanted to live in Missouri. Gillespie described the minors' relationship as unusually close. Gillespie stated Timothy wanted to live with his mother "strictly because of his friends." Timothy told Gillespie his mother "would probably bribe him" to stay with her but he did not decide to stay with her because of her actions. Gillespie stated she would like to see the children live together. Gillespie explained the children had negative feelings toward their mother because of her violent behavior toward them during and after the divorce proceedings. Michael told Gillespie his mother would not hit him now because he would hit her back. Michael also told Gillespie he wanted to see his mother on occasion but it would have to be at his request. Gillespie stated Timothy did not see respondent's promise to buy him Reeboks, a basketball hoop, and a dog as a bribe because respondent had previously promised him she would buy these things for him. Gillespie stated the incidents of physical violence between respondent and her sons were not recent but occurred in the past.

At the time of the hearing, respondent was separated from David Jordan and stated she was going to get a divorce from him.

The trial judge considered all of the evidence presented and the counseling reports on file from various agencies and individuals. At the close of the evidence, the guardian *ad litem* for the minors recommended the custody of both minors be placed with petitioner. The trial judge adopted the guardian *ad litem*'s recommendations, ordered petitioner be given permanent custody of the two minors, but noted Timothy may require more supervision in Missouri. The trial judge also noted Dr. Gillespie's opinion that the minors should be placed together and the fact that respondent's home situation was unstable.

Prior to the entry of a written order regarding the change of custody, a motion for reconsideration of the order was filed on behalf of Timothy by an independent attorney. The motion alleged that because the two minors' interests in the proceedings were adverse to each other, the court-appointed guardian *ad litem* could not and did not adequately represent each minor and, therefore, requested reconsideration and a stay of the order transferring custody of the minors to petitioner. The trial court found Timothy had no standing to file a motion for reconsideration of the custody order. A written order consistent with the trial judge's findings following the hearings on change of custody was entered on August 27, 1990.

Respondent first argues the trial court abused its discretion by placing both minors with petitioner because each minor should have been placed with the parent of his choosing. According to respondent, separate custody is the only way to improve contact between the parents and the two children. Respondent contends the evidence established the minors would be content living apart from each other. Respondent also suggests more consideration should have been given to Timothy's desire to stay in Illinois with his mother.

 Modification of child custody orders are governed by section 610 of the Illinois Marriage and Dissolution of Marriage Act (Act) (Ill. Rev. Stat. 1989, ch. 40, par. 610). (*In re Marriage of Gibbons* (1987), 158 Ill. App. 3d 998, 512 N.E.2d 52.) Section 610(b) provides in part:

> "The court shall not modify a prior custody judgment unless it finds by clear and convincing evidence, upon the basis of facts that have arisen since the prior judgment or that were unknown to the court at the time of entry of the prior judgment *** in the case of a joint custody arrangement that a change has occurred in the circumstances of the child or either or both parties having custody, and that the modification is necessary to serve the best interest of the child. In the case of joint custody, if the parties agree to a termination of a joint custody arrangement, the court shall so terminate the joint cus-

tody and make any modification which is in the child's best interest. The court shall state in its decision specific findings of fact in support of its modification or termination of joint custody if either parent opposes the modification or termination." (Ill. Rev. Stat. 1989, ch. 40, par. 610(b).)

Where both parties petition for custody, it is readily apparent the parties desire a termination of the joint custody arrangement. Under these circumstances, section 610(b) directs the trial court "shall so terminate the joint custody and make any modification which is in the child's best interest." Ill. Rev. Stat. 1989, ch. 40, par. 610(b).

■ In making a custody determination, the court has a duty to consider all relevant factors, including:

" '(1) the wishes of the child's parent or parents as to his custody;

(2) the wishes of the child as to his custodian;

(3) the interaction and interrelationship of the child with his parent or parents, his siblings and any other person who may significantly affect the child's best interest;

(4) the child's adjustment to his home, school and community;

(5) the mental and physical health of all individuals involved; and

(6) the physical violence or threat of physical violence by the child's potential custodian, whether directed against the child or directed against another person but witnessed by the child.' Ill. Rev. Stat. 1985, ch. 40, par. 602(a)." (*In re Marriage of Lovejoy* (1987), 158 Ill. App. 3d 1, 4, 510 N.E.2d 636, 637.)

The determination of child custody rests largely within the broad discretion of the trial court, and its decision at trial will not be disturbed on appeal unless it is against the manifest weight of the evidence or unless the court has abused its discretion. (*In re Marriage of Siegel* (1984), 123 Ill. App. 3d 710, 463 N.E.2d 773.) In custody cases, seldom is either parent shown to be perfect. There is no guarantee that parents will continue their devotion to caring for children after they leave the courtroom. Trial courts have the unenviable task of determining the best interests of the child after considering the section 602(a) factors. (Ill. Rev. Stat. 1989, ch. 40, par. 602(a).) Great deference must be accorded that decision since the trial court is in a superior position to judge the credibility of witnesses and determine the needs of the child. *In re Custody of Sussenbach* (1985), 108 Ill. 2d 489, 485 N.E.2d 367.

■ The evidence established that since the first custody order was entered in 1984, respondent moved to Illinois and remarried. Her relationship with her new husband was at times abusive and violent. Both minors also reported respondent was physically and verbally abusive toward them. Respondent works full time on the third shift at a local company while her husband, David Jordan, has sporadic employment. Petitioner is also remarried and the minors reported getting along well with him and their stepmother. While the custody of the minors was shared by the parties under a joint-custody order prior to the initiation of these proceedings, the evidence showed the parties have never been able to directly communicate regarding their children. Instead, they use their children to gain information about each other. We conclude from this evidence that it is in the best interests of both minors that the permanent custody be placed with petitioner.

■ As noted, respondent suggests Timothy's desire to remain in Illinois with his mother should have been given more weight by the trial judge. We disagree. If children are of sufficient maturity, their choice in custody matters is an important element to be taken into account, but is not controlling or binding upon the court. (*Filipello v. Filipello* (1971), 130 Ill. App. 2d 1089, 1096, 268 N.E.2d 478, 483.) Here, Timothy, now age 13, changed his mind about wanting to live with his mother just prior to the hearing and his reasons for wanting to stay with her were not related to his feelings for her but had more to do with his desire to stay near his friends, a fact noted by both the guardian *ad litem* and Dr. Gillespie. The trial judge considered Timothy and Michael's wishes regarding custody, but determined that it was in Timothy's best interests that he go with his brother and live in his father's home, which is more stable. The stability of the child's environment is an important factor in determining the child's best interests. (*In re Marriage of Pease* (1982), 106 Ill. App. 3d 617, 435 N.E.2d 1361.) We will not disturb the trial court's findings on this issue.

Respondent also argues the trial court erred in finding Timothy had no standing to request a reconsideration of the order granting petitioner permanent custody of the two minors. Respondent argues minors in custody proceedings should be given the same status as minors in abuse or neglect proceedings. Further, respondent contends Timothy's position in these proceedings was like that of an intervenor. She argues that because of inadequate representation by the guardian *ad litem* for Timothy and the fact that he (Timothy) will be bound by

the decision, Timothy should have been allowed to challenge the trial court's order.

■■ We find no error in the trial court's decision regarding Timothy's motion for reconsideration. We note respondent provides no authority for her argument that the minors in custody proceedings are similar to minors in abuse proceedings and, thus, this argument will not be considered. The record shows a guardian *ad litem* was appointed for both minors as provided by section 506 of the Act (Ill. Rev. Stat. 1989, ch. 40, par. 506). Timothy was a witness in an in-chambers hearing before the trial court. The guardian *ad litem*, as Timothy's representative, was a *party* to the action and, thus, the one to present in the trial court a motion for reconsideration of the judgment. (Ill. Rev. Stat. 1989, ch. 110, par. 2—1203.) Further, Timothy could not challenge the quality of the guardian *ad litem*'s representation for the first time after the judgment was rendered. Moreover, from our reading of the record, we find the guardian *ad litem*'s representation of both minors was adequate.

For the foregoing reasons, the order of the trial court awarding permanent custody of the minors to petitioner is affirmed.

Affirmed.

LUND, P.J., and KNECHT, J., concur.