*In re* MARRIAGE OF ANNE M. GUSTAVSON, n/k/a Anne M. Veselack, Petitioner-Appellee and WILLIAM D. GUSTAVSON, Respondent-Appellant.

Fourth District   No. 4—92—0964

Opinion filed August 5, 1993.

William D. Gustavson, of Bloomington, appellant *pro se.*

Alan I. Weintraub, of Thomson & Weintraub, of Bloomington, for appellee.

JUSTICE COOK delivered the opinion of the court:

The circuit court of McLean County denied William Gustavson's petition for modification of custody. We affirm.

Anne Gustavson (now known as Anne Veselack) and William Gustavson were married May 12, 1984. They have one child, K.A.G. (born August 30, 1984). On January 15, 1988, Anne filed a petition for dissolution of marriage requesting temporary and permanent custody of the minor child. The court granted temporary custody of K.A.G. and exclusive temporary possession of the marital residence to Anne, and ordered William to vacate the marital residence and pay temporary child support. Anne subsequently filed a petition for preliminary injunction, and the court entered an order enjoining William from following, photographing, or telephoning Anne in a harassing manner. On October 25, 1988, the court entered a judgment of dissolution of marriage, reserving other issues, including permanent child custody.

William filed a *pro se* motion to vacate dissolution of marriage and a notice of appeal, docketed No. 4—88—0878. William's appeal was dismissed by this court for failure to file an appellant's brief as required by Supreme Court Rules 342 and 343 (134 Ill. 2d Rules 342, 343). (*In re Marriage of Gustavson* (4th Dist. 1989), No. 4—88—0878 (order of dismissal).) After a hearing on October 4, 1989, the circuit court entered a written order on October 31 regarding all remaining issues, including an award of permanent custody of the minor child to Anne. William filed a *pro se* motion for reconsideration and a notice of appeal (docketed No. 4—89—0860). This court dismissed William's appeal on his motion (*In re Marriage of Gustavson* (4th Dist. 1989), No. 4—89—0860 (order of dismissal)), and the trial court denied his motion for reconsideration.

On July 19, 1991, William filed a petition for change of custody, which was dismissed by the trial court because it was filed within two years of the October 1989 custody determination and did not meet the conditions of section 610(a) of the Illinois Marriage and Dissolution of Marriage Act (Act) (Ill. Rev. Stat. 1989, ch. 40, par. 610(a)). On August 19 William filed a motion for leave to file petition for change of custody and an affidavit in support of his motion; the court granted William leave to file. On October 3 William filed a petition for change of custody alleging "significant changes in the circumstances of the parties affecting the best interests of the minor child of the parties

which would warrant a change in custody from [Anne] to [William]." He alleged more specifically that (1) Anne "has not provided the child with a proper moral environment," (2) Anne "has used and continues to use drugs within the home while the minor child is present," (3) Anne lost her job because "she obtained cocaine from the hospital pharmacist under false pretenses," (4) Anne "has been charged criminally for possession of cocaine," (5) Anne "has threatened suicide," (6) Anne's husband uses "excessive force in disciplining the child," and (7) Anne "has failed to adequately supervise the child and he has been injured on several occasions." William also filed a motion to modify child support alleging in part he had no source of income because he was presently unemployed.

At the hearing Anne presented evidence that despite the court's order enjoining William from harassing her, he continued to contact her and send notes to her, and he was uncooperative regarding visitation. Anne testified regarding the suicide attempt. On the evening of October 22, 1989, Anne called William to make arrangements for her to pick up K.A.G. after she finished work at Brokaw Hospital. She testified that "he said don't bother coming to pick him up; we won't be here, *** you will be lucky to see him in heaven if you even get there." William testified that he could not remember his exact words, but that he might have said "the next time you see [K.A.G.] may be in heaven." Anne had just concluded an extended and emotional custody battle with William, and she felt that "nothing had changed" even though she had custody of K.A.G. She "gave up hope" because she believed William was going to take and conceal K.A.G. from her as he had done in the past. Anne procured liquid cocaine from the hospital pharmacy and took it with the intent of committing suicide; she had never attempted to take her life before. Following her suicide attempt Anne was discharged from her position at Brokaw. Although it was not clear from the testimony at trial, Anne indicated in a previous affidavit that based on this incident at Brokaw she had "plead[ed] guilty to theft under $150, a misdemeanor." Anne retained her nursing license subject to a consent order with the Illinois Department of Education and Regulation; as a condition of the order, Anne is required to submit to unannounced drug tests, all of which have been negative. She has been employed at Lake Forest Hospital as a staff nurse in cardiopulmonary rehabilitation for two years. She works flex-time, which permits her to vary her working hours around K.A.G.'s school and activity schedule.

Anne married Paul Veselack in May 1991 and they had a daughter in the spring of 1992. Paul, who is also employed at Lake Forest Hos-

pital, helps take care of the children and has become actively involved in K.A.G.'s sports, music, and outdoor activities. Anne denied William's allegations that she uses illegal drugs, and stated that she has never known Paul to use excessive force in disciplining the children. Anne testified about two incidents in which K.A.G. had been injured. In the first incident K.A.G. fell off a rocking chair "because he was goofing around." In the second incident K.A.G. burned his finger when he touched Paul's motorcycle; K.A.G. immediately received first aid for the burn and Paul no longer owns a motorcycle. Anne presented evidence showing the amenities at their house and in their neighborhood, and indicated that K.A.G. participates in community activities. Anne has a close family relationship with relatives who live near her home, including parents and siblings. She presented evidence that K.A.G. has attended religious classes through the Catholic church and that she taught religion to a sixth-grade class at the church. She also testified that K.A.G. had made excellent academic progress, and introduced evidence showing the school district he attends has a high rating.

Although William alleged that Anne used illegal drugs at the house, he admitted that he had "no way of knowing" whether Anne had used illegal drugs since the dissolution of marriage. William also failed to present any evidence to show that Anne failed to adequately supervise K.A.G. or that Paul had used excessive force in disciplining K.A.G. At the hearing significant evidence was presented regarding William's life-style, which we need not go into on this appeal.

On August 24, 1992, the trial court entered an order denying William's petition for modification of custody. The trial court subsequently denied William's motion for reconsideration and William filed a timely notice of appeal.

On appeal, William contends the trial court abused its discretion in denying his petition for change of custody. The primary focus of the appeal is not whether a modification of custody is necessary to serve K.A.G.'s best interest. Instead William seems intent on using his modification petition as a vehicle to remedy perceived defects in the original award of custody. William complains that Anne's testimony at the original hearing was perjured; that Anne attempted suicide October 22, 1989 (a matter considered when William's motion to reconsider was denied April 18, 1991); that Anne was convicted of theft of cocaine from the hospital where she worked, in connection with the suicide attempt; and that it was a travesty of justice for the trial court not to have granted the motion for reconsideration in 1991.

■ Section 610 of the Act (Ill. Rev. Stat. 1989, ch. 40, par. 610) governs actions for modifications of child custody judgments. It provides in pertinent part:

> "(b) The court shall not modify a prior custody judgment unless it finds by clear and convincing evidence, upon the basis of facts that have arisen since the prior judgment or that were unknown to the court at the time of entry of the prior judgment, that a change has occurred in the circumstances of the child or his custodian, or in the case of a joint custody arrangement that a change has occurred in the circumstances of the child or either or both parties having custody, and that the modification is necessary to serve the best interest of the child." (Ill. Rev. Stat. 1989, ch. 40, par. 610(b).)

This section reflects an underlying policy favoring finality of child custody judgments and creating a presumption in favor of the present custody so as to promote stability and continuity in the child's custodial and environmental relationships. (*In re Custody of Sussenbach* (1985), 108 Ill. 2d 489, 499, 485 N.E.2d 367, 371; *In re Marriage of Fuesting* (1992), 228 Ill. App. 3d 339, 344, 591 N.E.2d 960, 963.) The focus of a modification proceeding should be the best interests of the minor child. (Ill. Rev. Stat. 1989, ch. 40, par. 610(b); *Fuesting*, 228 Ill. App. 3d at 344, 591 N.E.2d at 963 ("The paramount issue in all matters concerning custody of a child is his or her welfare").) Great deference must be accorded the trial court's custody determination since the trial court is in a superior position to judge the credibility of the witnesses and determine the best interests of the child. (*Sussenbach*, 108 Ill. 2d at 499, 485 N.E.2d at 371; *In re Marriage of Apperson* (1991), 215 Ill. App. 3d 378, 383, 574 N.E.2d 1257, 1261.) The trial court's determination will not be disturbed on appeal unless there is a clear abuse of discretion or the decision was contrary to the manifest weight of the evidence. *Sussenbach*, 108 Ill. 2d at 499, 485 N.E.2d at 371; *Apperson*, 215 Ill. App. 3d at 383, 574 N.E.2d at 1260.

■ Although a custodian's suicide attempt may present concerns about a child's welfare, a court may consider the fact the suicide attempt was prompted by the wrongful conduct of the noncustodian. After the trial court awarded permanent custody of K.A.G. to Anne, she had difficulties coping with William's propensity to expand his visitation rights. Anne attempted suicide, but she has since addressed her problems and continues to participate in a support group. Numerous other allegations about Anne's behavior were unsubstantiated. The record is devoid of evidence that it would be in the child's best interest to transfer custody to William. Given the totality of the cir-

cumstances, we are not persuaded by William's argument that the trial court abused its discretion.

It is difficult to believe that William's petition for modification, this appeal, and much of the other litigation initiated by William have been with the best interests of the child in mind. Instead it appears that William is interested in pursuing his personal vendetta with Anne, and is indifferent to any resulting harm to K.A.G. In that connection we quote the following from William's brief:

> "Because Judge Dearborn believed her perjured testimony and based his decisions upon this perjured testimony, about both the drug usage and the illicit relationship with Paul Veselack during the marriage, Judge Dearborn's decisions were more than an abuse of discretion; they were injustice and should be reversed with custody of the minor child to be placed with Appellant on a term of years equal but not limited to the length Mrs. Gustavson Veselack has enjoyed this custody gained illegally and deceptively by means of her perjury. Then a new, fair hearing with unperjured testimony should be held."

This argument proceeds as if all that were involved here were a contest between William and Anne, with K.A.G. just a prize to be won. Nothing could be further from the truth. Whatever Anne's deficiencies might be, the trial court's original order awarding her custody became final when William did not pursue that appeal. Even assuming Anne should not initially have been awarded custody, custody should not now be changed unless K.A.G.'s best interests require it. It is in K.A.G.'s best interests that he not be bounced back and forth from one parent to another. William has not come close to establishing by clear and convincing evidence, on the basis of facts which have arisen since the denial of his motion to reconsider, that modification "is necessary to serve the best interest of the child." Ill. Rev. Stat. 1989, ch. 40, par. 610(b).

Accordingly, we affirm the decision of the circuit court of McLean County denying William's petition for change of custody.

Affirmed.

McCULLOUGH and GREEN, JJ., concur.