In re MARRIAGE OF JANE M. CRIPE, n/k/a Jane M. Ponder, Petitioner-Appellant, and RODNEY E. CRIPE, Respondent-Appellee.

Fifth District    No. 5—88—0595

Opinion filed April 27, 1989.

Alan Pretnar, of Taylor Springs, for appellant.

Meyer & Meyer, of Greenville, for appellee.

PRESIDING JUSTICE WELCH delivered the opinion of the court:

Appellant, Jane Cripe, now Ponder, appeals from the denial of her post-trial motion and motion to vacate an order of the circuit court of Bond County, entered July 22, 1988, modifying custody with respect to the children of her marriage to appellee, Rodney E. Cripe. The parties' marriage was dissolved by order of the circuit court of Bond County on July 1, 1987. By order of the court dated February 8, 1988, appellant was given permanent custody of the parties' two minor children, Camille Cripe and Dori Kay Cripe.

On July 19, 1988, appellee filed a petition to modify the custody order, alleging a substantial change of circumstances affecting the best interests of the children and seriously endangering the physical, mental, moral and emotional health of the children. The petition was accompanied by an affidavit which recites that appellant is living in open and notorious adultery with a man to whom she is not married but who is married to another woman; that someone who lives in the house other than the children is believed to be using illegal drugs in the presence of both the children; that appellant spends large amounts of time away from the home and leaves the children with various baby-sitters, including her paramour; and that the children have been instructed to call appellant's paramour "daddy," and to call appellee, their natural father, "Rod." The affidavit further recites that the children are living in this environment and that it seriously endangers their physical, mental, moral and emotional health.

Hearing was held on the petition on July 19, 1988. The following evidence was adduced. Appellant's paramour, Adolph McCuin Ponder, Jr., testified that he is 35 years of age and resides with the appellant and her children at 950 East Oak, Greenville. He had lived there for approximately four months preceding the hearing. At the time of the hearing, Camille Cripe was seven years of age and Dori Kay Cripe was 10 months of age. Ponder is employed in East Alton where his usual hours of work are 3:30 p.m. to 12 a.m. He is married and has two children by his wife, both of whom reside with his wife. Ponder sleeps in the master bedroom with appellant. Each of appellant's children has her own bedroom approximately 20 to 25 feet from the master bedroom. Ponder and appellant engage in sexual relations in the master bedroom when the children are present in the house. Ponder occasionally baby-sits the children. The children never call Ponder "daddy," nor has he or anyone else told the children to call him

"daddy." Most of the time, Ponder parks his vehicle in the driveway or the back yard of appellant's house. Ponder occasionally drinks alcoholic beverages and has been drunk twice in the four months preceding the hearing. Ponder has advised some people of where he is living. There is a proceeding pending in the circuit court of Madison County to dissolve Ponder's marriage and a hearing is scheduled in that cause. Ponder loves appellant and intends to marry her as soon as his marriage is dissolved. Appellant feels the same way toward Ponder. Their relationship is exclusive. Ponder gets along well with appellant's children and cares for them as his own. The children have no hesitancy to stay with Ponder when appellant is gone. Appellant does not leave the children with a baby-sitter for extended periods of time except when she is at work. Ponder feels love and affection for appellant's children. Ponder realizes that he is committing the crime of adultery with appellant.

Appellant testified that she has lived with Adolph Ponder for four months. She has sexual relations with him while the children are in the house. She works in Alton and has varying work hours. When appellant is at work, she leaves the children with her sister-in-law in Greenville. She drops them off before she goes to work and picks them up on her way home from work. She sometimes picks them up at midnight or drops them off at 5:30 a.m. This does not seem to disturb the children, and they go right back to bed. Sometimes the children spend the night at the baby-sitter's. Ponder sometimes baby-sits the children on Sunday. The children call Ponder "Adolph," and appellant has never told them to call him "daddy." Appellant has not smoked marijuana since her marriage to appellee was dissolved, nor has anyone smoked marijuana in her home. She has never smelled marijuana in her home. Ponder does not smoke marijuana. Neither she nor Ponder use any illegal drugs. The same people baby-sit her children now as did when she was married to appellee.

Appellee testified that he is 29 years of age, is remarried and lives in Greenville. Both appellee and his wife work during the day. He and his wife own their two-bedroom home. He has made arrangements for baby-sitters while he and his wife are at work in the event he gains custody of the children. Camille, the older child, will not have to change schools if appellee is awarded custody. On May 11, 1988, appellee went to appellant's home to pick up the children for visitation. When he entered the home, he smelled marijuana. Appellee had smelled marijuana only one time previously, but stated that he knew what it smelled like. He testified that it smelled like burning brakes or something rotten. Appellee has never smoked marijuana,

but smelled it one time at a party five or six years before the hearing.

Appellee's wife testified that she is 31 years of age and is a school teacher at Vandalia Junior High School. She wants appellee to gain custody of his children. She is willing to have the children live in her home and would care for them and love them as her own. She gets along well with the children. Appellant testified in rebuttal that she loves Ponder very much and plans to marry him as soon as his divorce is final. Ponder loves her children and they have a happy home together. When she marries Ponder, they plan to move to Bunker Hill, which is closer to both of their jobs. Camille will have to change schools. Ponder plays with the children and all four of them do things and go places on appellant's day off. Appellant has not seen any change in the mental health of her children since the dissolution of her marriage to appellee, and Camille's performance at school has improved. Appellant has seen no change in her children's sleeping or eating habits since the dissolution of her marriage. Appellant believes Ponder loves her children very much. He frequently buys them things and takes them places. Appellant expects to spend the rest of her life with Ponder. She is never gone from her children for substantial periods of time except when she is at work. Appellant realizes that she is committing the crime of adultery with Ponder. Her children realize she is in love with Ponder. Appellant testified that Camille has never told anyone that she prefers to live with her father, the appellee.

Dawn Kirkman, appellant's niece, testified that appellant told her that Camille had told appellant that she wanted to live with her father. Dawn had never heard Camille express that she wanted to live with her father.

At the close of the evidence, the court entertained the arguments of counsel. Appellee's counsel argued that appellant has been living in open and notorious adultery with Ponder and that this immoral and illegal conduct is not in furtherance of the morals and best interests of the children, and further, that the court should not condone such conduct. Appellant's counsel argued that there is no *per se* rule that open and notorious adultery alone is sufficient to warrant a modification in custody and that appellee had failed to show that the appellant's conduct in any way seriously endangered the mental, moral or emotional health of the children.

At the close of the hearing, the court found that there was insufficient evidence that someone had been smoking marijuana in appellant's home while the children were present, as appellee had failed to establish with sufficient reliability that he was able to recognize the odor of marijuana. The court found a substantial change in circum-

stances in that appellant had begun living with a man not her husband. The court pointed out that appellant knew she was violating a criminal law by living in open and notorious adultery with Ponder, but chose to ignore that law. This, the court found, endangers the moral and emotional health of the children. The court found that appellee had proved his petition and ordered that custody of the children be transferred to appellee the following evening at 5 p.m., when appellee normally had visitation. Appellant was granted visitation rights. Appellee's attorney was to prepare a written order.

The court's written order, entered July 22, 1988, finds by clear and convincing evidence that a change of circumstances had occurred since the judgment of dissolution had been entered which warrants modification of said judgment. The change of circumstances was that appellant had begun living with a married man to whom she was not married and that the children were living in the same house with appellant and her paramour. Modification of custody was necessary to serve the best interests of the children. The court also found that appellee could provide a suitable home for the children. The order awarded custody of the children to appellee.

Appellant filed her post-trial motion on August 12, 1988, asking the court to reconsider and reverse the order modifying custody, or in the alternative, asking the court to make specific findings of fact as to how the children's environment seriously endangers their health and why modification is necessary to serve the best interests of the children. Hearing on the motion was scheduled for August 25, 1988. Immediately prior to the hearing, on August 25, 1988, appellant filed a verified motion to vacate the modification order. The verified motion alleges that appellant is no longer living in open and notorious adultery with Ponder, as they were married on August 20, 1988. Appellee objected to hearing the motion to vacate immediately, as he had not received any notice of its filing. The court continued hearing on the motion to vacate until a later date. Hearing was held on the post-trial motion. After hearing counsels' argument, the court took the matter under advisement.

On September 23, 1988, the court issued its written order on the post-trial motion. The order recites that the evidence was undisputed that appellant was living in open and notorious adultery with a man in violation of the Illinois Criminal Code of 1961 (Ill. Rev. Stat. 1985, ch. 38, par. 1—1 *et seq.*) and that under the Illinois Supreme Court's decision in *Jarrett v. Jarrett* (1979), 78 Ill. 2d 337, 400 N.E.2d 421, this environment seriously endangers the moral health of the children. It is not necessary to wait until the adverse effects manifest them-

selves before custody may be modified. The court further found that the evidence at the hearing on the petition demonstrated that appellant and Ponder were not married and, because he was already married to someone else, could not marry appellant. The court found this factual situation to be similar to that in *Jarrett*. Appellant's post-trial motion was denied. By docket entry made September 26, 1988, the court, without stating any reasons, also denied appellant's motion to vacate the modification order.

Appellant now brings this appeal, raising four interrelated issues: (1) whether the judgment should be deemed void for failure of the trial court to expressly make any specific findings that the children's present environment seriously endangers their physical, mental, moral or emotional health; (2) whether the order modifying custody is against the manifest weight of the evidence; (3) whether the moral indiscretions of a parent are sufficient grounds for modifying custody where the children are living normal lives; and (4) whether the trial court erred in denying appellant's motion to vacate the modification order where the only ground for the modification had been rectified when appellant married her paramour.

■■ ■ With respect to the first issue raised by appellant, we find that the trial court did make adequate findings that the children's environment seriously endangered their moral health. In its oral pronouncement following the hearing on the petition for modification, the trial court specifically and expressly found that the fact that their mother was living in open and notorious adultery, in violation of the Criminal Code, seriously endangered the moral and emotional health of the children. While the court did not make this express finding in its written order on the petition for modification, it did make this express finding in its written order on appellant's post-trial motion. The trial court also made an express finding in its written order on the petition for modification that modification of custody was necessary to serve the best interests of the minor children. These findings are adequate to meet the requirement of *In re Custody of Carter* (1985), 137 Ill. App. 3d 439, 484 N.E.2d 1175, that an order modifying custody must contain express findings of fact that the children's present environment seriously endangers their physical, mental, moral or emotional health and that modification of custody is necessary to serve the best interests of the children.

The next two issues raised by appellant are so interrelated that we will address them as one. Appellant argues that the order of the trial court modifying custody is against the manifest weight of the evidence because there was no evidence presented that the children's

environment seriously endangered their physical, mental, moral or emotional health, and that the moral indiscretions of a parent are not sufficient grounds for modifying custody where the children are living otherwise normal lives. Appellant argues that there was no evidence presented to show that appellant's living arrangement had any adverse effect upon the children at all and that the mere fact that appellant was living with a man in open and notorious adultery was insufficient ground upon which to modify custody without some showing that the living arrangement had an adverse effect upon the children.

■ This was precisely the issue presented in *Jarrett v. Jarrett* (1979), 78 Ill. 2d 337, 400 N.E.2d 421. The court in *Jarrett* held that tangible manifestations of a contemporaneous adverse effect on the children is not required before a modification of custody can be ordered, where the parent maintains an open and continuing conjugal cohabitation with another. However, we agree with the decision in *Brandt v. Brandt* (1981), 99 Ill. App. 3d 1089, 425 N.E.2d 1251, that *Jarrett* did not create a *per se* rule requiring a change in custody of minor children anytime the custodial parent cohabits, in the children's presence, with a member of the opposite sex openly and on a continuing conjugal basis. Instead, we believe that the custodial parent's living arrangement is only one of the factors to be considered in determining whether a modification of custody is warranted.

It is important to the case now before us to note that the supreme court in *Jarrett* stated that not every parent who has violated the community's moral standards should be denied custody of their children. The supreme court held that, rather than mechanically denying custody in every such instance, the courts of this State must appraise the moral example currently provided and the example which may be expected by the parent in the future. This rule, the court stated, focuses the trial court's attention on the moral values which the parent is actually demonstrating to the children.

In *Jarrett*, the children were aged 12, 10 and 7 years. Shortly after her divorce, their mother, who was awarded custody, began cohabiting with a man not her husband. The children asked their mother if she planned to marry her paramour, and she responded that she did not know. At the hearing on the petition to modify custody, the mother testified that she had no plans to marry her paramour in the immediate future, and that, in fact, she did not wish to remarry. The mother's paramour also testified that they had no plans to marry. The supreme court affirmed the trial court's modification of custody, finding that this environment endangered the moral well-being of the children.

In *Jarrett*, modification was warranted because there was no evidence to indicate that the parent's immoral or illegal conduct would not continue in the future. Thus, not only did the mother's current conduct set a poor example for the children, but that poor example was expected to continue in the future.

In the instant case, however, the evidence clearly indicates that at the time of the hearing on the petition for modification, appellant and her paramour had a present intention to marry as soon as Ponder was free to do so. The evidence showed that proceedings had begun to dissolve Ponder's marriage, and a hearing therein was scheduled for the immediate future. According to appellant's verified motion to vacate, she and Ponder did, in fact, marry before the court had ruled on appellant's post-trial motion. Therefore, it should have been apparent to the trial court that, although appellant had engaged in immoral or illegal conduct in the past, that conduct was not expected to continue in the future.

■■ We find this case to be similar to *Rippon v. Rippon* (1978), 64 Ill. App. 3d 465, 381 N.E.2d 70, which was expressly approved of by the supreme court in *Jarrett*. (*Jarrett*, 78 Ill. 2d at 348, 400 N.E.2d at 425.) The court in *Rippon* held that "[o]nly when an open adulterous relationship exists *with no possibility of marriage*, as when the paramour is and remains married to another woman, is there sufficient grounds to remove custody from the mother." (Emphasis added.) (64 Ill. App. 3d at 468, 381 N.E.2d at 138.) In *Jarrett*, the supreme court distinguished *Rippon* from its decision in that case, stating, "[i]n *Rippon* the mother who had committed the indiscretion planned to marry her paramour and there was no indication of future misconduct." (78 Ill. 2d at 348, 400 N.E.2d at 425.) *Rippon* therefore fell within the rule of *Nye v. Nye* (1952), 411 Ill. 408, 105 N.E.2d 300, rather than the rule of *Jarrett*. *Nye* held that past moral indiscretions of a parent are not sufficient grounds for denying custody if the parent's present conduct establishes the improbability of such lapses in the future. Similarly, we believe that the instant case falls within the rule of *Nye*, rather than the rule of *Jarrett*.

■■ Because the evidence in this case clearly shows that appellant's moral indiscretions would not continue in the future, we find that the trial court's order modifying custody was against the manifest weight of the evidence. We therefore reverse it. For the same reason, we find that the trial court's denial of appellant's motion to vacate the order of modification was error.

■■ In light of the nature of this case and the fact that the children have been erroneously in the custody of their father for an ex-

tended time, we hereby direct the clerk of the appellate court to issue the court's mandate herein *instanter* and contemporaneously with the filing of this opinion. We so order on our own motion pursuant to authority granted us by Supreme Court Rule 368(a) (107 Ill. 2d R. 368(a)).

For the foregoing reasons the judgment of the circuit court of Bond County is reversed.

Reversed.

HARRISON and GOLDENHERSH, JJ., concur.