In re MARRIAGE OF CARLA JEAN FUESTING, Petitioner and Counter-respondent-Appellee, and DONALD JOSEPH FUESTING, Respondent and Counterpetitioner-Appellant.

Fifth District   No. 5—91—0098

Opinion filed May 4, 1992.

340

Dale F. Choisser, of Burnside, Dees, Johnston & Choisser, of Vandalia, for appellant.

James F. Jarrett, of Schniederjon, Weber, & Jarrett, of Effingham, for appellee.

PRESIDING JUSTICE GOLDENHERSH delivered the opinion of the court:

Respondent and counterpetitioner (hereinafter respondent), Donald Joseph Fuesting, appeals from a judgment of the circuit court of Effingham County in favor of petitioner and counterrespondent (hereinafter petitioner), Carla Jean Fuesting. Both parties sought a modification of a judgment of dissolution of marriage entered October 9, 1984. In this cause respondent raises the following four issues: (1) whether the trial court's order denying respondent's counterpetition for modification of custody was against the manifest weight of the evidence, (2) whether the trial court's order increasing the amount of child support to be paid by respondent from $175 per month to $90 per week was against the manifest weight of the evidence, (3) whether the trial court's order finding respondent in contempt for failing to return the minor child at the end of his six-week period of summer visitation was against the manifest weight of the evidence, and (4) whether the trial court's order requiring respondent to pay petitioner $400 in attorney fees for his failure to comply with the terms of the previously entered separation agreement was against the manifest weight of the evidence. We affirm in part, vacate in part, and reverse in part.

Petitioner and respondent were divorced on October 9, 1984. One child was born of the marriage, a daughter, Kara. Since the time of the divorce, Kara has been in the custody of petitioner by the parties' agreement. Respondent had reasonable visitation rights along with six weeks of visitation during the summer. The original judgment of dissolution ordered respondent to pay $175 per month in child support and allowed petitioner to claim Kara as her dependent for income tax purposes. Respondent assumed the obligation of maintaining medical coverage on Kara.

Kara, who was 11 years old at the time of the instant proceedings, remained in Effingham almost exclusively after her parents' divorce. Shortly after the parties' divorce, petitioner and Kara moved to Stillwater, Oklahoma, where petitioner and respondent apparently attempted a reconciliation. Petitioner and Kara remained in Stillwater for six months but then moved back to Effingham. Respondent remained in Stillwater but recently moved to Marietta, Georgia, with his new wife, Judy, whom he married on May 23, 1986.

The custody and support agreements were followed by the parties, and all went smoothly until April 30, 1990, when petitioner

filed a petition for modification of the judgment of dissolution seeking an increase in child support to a figure equal to at least 20% of respondent's current net income. Petitioner also sought to enforce the part of the judgment of dissolution agreement which required respondent to provide medical insurance for Kara. On June 22, 1990, respondent filed an answer to the petition along with a counterpetition for modification in which he sought the right to claim Kara as a dependent for tax purposes as well as an order requiring petitioner to provide medical insurance for Kara. Respondent also sought contribution for the expenses he incurred in transporting Kara to his home for visitation. On July 30, 1990, respondent filed count II to his counterpetition seeking custody of Kara. Additionally, respondent filed a petition for temporary relief seeking custody of Kara. On August 7, 1990, petitioner filed a petition for enforcement of visitation and a contempt citation due to respondent's failure to return Kara after his six-week summer visitation period, which expired on July 21, 1990. On August 9, 1990, respondent filed an answer to this petition. On August 17, 1990, the trial court entered an order requiring respondent to return Kara to petitioner and ordering a rule to show cause to issue as to why respondent should not be held in contempt for failing to return Kara at the end of the six-week summer visitation period. All issues were scheduled for hearing on September 4, 1990. At the hearing, evidence was adduced from several witnesses and included the following testimony pertinent to the issues before us. Other facts will be discussed during our resolution of the specific issues.

Both respondent and petitioner are homeowners. Petitioner lives with her fiance, Dennis Wilson. The two have been living together for approximately four years and during that time have engaged in sexual relations. While petitioner and Mr. Wilson intend to marry at some point, no plans are definite. Petitioner and Mr. Wilson are both liable on the mortgage on the house they share. They share living expenses, have purchased personal property together, and share bank accounts. Respondent lives with his new wife, Judy, in Marietta, Georgia. They purchased a home for $150,000 upon moving to Marietta. Both respondent and petitioner have adequate room for Kara in their respective homes.

Respondent is employed as a bindery supervisor. Respondent leaves his home to go to work around 2 p.m. and arrives home around 11:30 p.m. Both respondent and his new wife testified that should they be awarded custody of Kara, Judy would quit her job and remain home to be with Kara. Petitioner also works in a print-

ing business. She works from midnight to 8 a.m. Dennis Wilson remains with Kara while her mother is at work.

By all accounts, Kara seems to have normal "stepparent" relationships with both Judy Fuesting and Dennis Wilson. Both respondent and petitioner expressed concern about Kara's religious training. Kara attends a Catholic grade school in Effingham and regularly attends church with either her mother or her grandmother Fuesting. Respondent indicated that he would continue taking Kara to church, but from his testimony, it is apparent that he is no longer a practicing Catholic and would choose to take Kara to a different type of Christian church.

Kara and petitioner seem to have a good mother-daughter relationship. Kara and respondent also seem to have a good relationship. Kara indicated that she would prefer to live with respondent in Georgia because "it would probably be a change."

After hearing all the evidence, the trial court denied respondent's petition to change custody, ordered respondent to pay the sum of $90 per week in child support, except for the six weeks that Kara is to be with respondent each summer, ordered petitioner to maintain health insurance through her employer on Kara and allowed respondent to delete Kara from insurance coverage through his employer, granted respondent the dependency deduction for Kara in 1991 and future years, and ordered respondent to pay petitioner $400 for her attorney fees incurred as a result of respondent's failure to return Kara after six weeks of summer visitation.

The first issue we are asked to address is whether the trial court's order denying respondent's counterpetition for modification was against the manifest weight of the evidence. Respondent contends that he proved by clear and convincing evidence that a change in circumstances had occurred in not only the circumstances of Kara and petitioner, but also in his own circumstances, which warranted modification of custody. Specifically, respondent contends that petitioner's conjugal relationship with a man to whom she is not married warrants and mandates modification of custody, especially when petitioner's home environment is contrasted to his own. Respondent contends that he and his wife, Judy, have more to offer Kara in terms of time, concern, love, religious training, and correct moral instruction. Petitioner responds that respondent did not meet the clear and convincing burden necessary to modify custody and that the trial court did not err in denying respondent's counterpetition for a change in custody. We agree with petitioner.

■■ Section 610 of the Illinois Marriage and Dissolution of Marriage Act (the Act) (Ill. Rev. Stat. 1989, ch. 40, par. 610) governs actions for modifications of child custody judgments. It provides in pertinent part:

"(b) The court shall not modify a prior custody judgment unless it finds by clear and convincing evidence, upon the basis of facts that have arisen since the prior judgment or that were unknown to the court at the time of entry of the prior judgment, that a change has occurred in the circumstances of the child or his custodian, or in the case of a joint custody arrangement that a change has occurred in the circumstances of the child or either or both parties having custody, and that the modification is necessary to serve the best interest of the child." (Ill. Rev. Stat. 1989, ch. 40, par. 610(b).)

This section reflects an underlying policy favoring the finality of child custody judgments and creating a presumption in favor of the present custody so as to promote stability and continuity in the child's custodial and environmental relationships. (*Gunter v. Gunter* (1981), 93 Ill. App. 3d 1043, 1048, 418 N.E.2d 149, 153.) The paramount issue in all matters concerning custody of a child is his or her welfare. Changed conditions, in itself, is not sufficient to warrant a modification in custody without a finding that such changed conditions affect the welfare of the child. (*Brandt v. Brandt* (1981), 99 Ill. App. 3d 1089, 1099, 425 N.E.2d 1251, 1259.) Child custody matters are within the discretion of the trial court which has heard testimony of the witnesses and observed their demeanor and is in a better position to determine what is in the best interest of the child. (*In re Marriage of Pease* (1982), 106 Ill. App. 3d 617, 618, 435 N.E.2d 1361, 1363.) The trial court's determination will not be disturbed unless there is a clear abuse of discretion or the decision was contrary to the manifest weight of the evidence. *Caulkins v. Caulkins* (1979), 68 Ill. App. 3d 284, 385 N.E.2d 1117.

■■ Respondent relies on *Jarrett v. Jarrett* (1979), 78 Ill. 2d 337, 400 N.E.2d 421, to support his contention that he should have been awarded custody of Kara. In *Jarrett*, the circuit court granted the father's petition for a modification of custody of the parties' three minor children based upon the mother's continuing cohabitation with a member of the opposite sex and awarded the father custody, finding it was " 'necessary for the moral and spiritual well-being and development' of the children." (78 Ill. 2d at 342, 400 N.E.2d at 422.) The appellate court reversed (*Jarrett v. Jarrett* (1978), 64 Ill. App. 3d 932, 382 N.E.2d 12). The supreme court, in a

split decision, reversed the appellate court and reinstated the order of the circuit court. However, even respondent agrees that *Jarrett* does not establish a *per se* rule that the custodial parent's cohabitation with a member of the opposite sex requires a modification of custody.

"[A] custody award is not arrived at by pressing one lever and mechanically denying custody to one parent; rather all of the circumstances must be considered that affect the best interests of the child." (*In re Marriage of Thompson* (1983), 96 Ill. 2d 67, 78, 449 N.E.2d 88, 93.)

Therefore, we must consider the totality of circumstances before us, not just petitioner's relationship with Dennis Wilson.

In the instant case, Kara has resided almost exclusively in Effingham with her mother since the parties divorced. Kara and her mother seem to have, for the most part, a warm and loving relationship. All indications are that Kara also has a warm and loving relationship with her mother's live-in fiance, Dennis Wilson. The relationship seems comparable to a stepfather-stepdaughter relationship. Kara is well adjusted to her school and has both family and friends in Effingham. While Kara expressed a desire to live with her father and stepmother, that decision seemed less than fully explored. Kara articulated her reason for wanting to live with her father over her mother as "it would be a change." Yet, over the summer Kara had also expressed her desire to remain with her father but later wanted to return home to be with her mother. The testimony indicated that Kara would be adequately taken care of and would enjoy reasonable comforts necessary for her development in either petitioner's or respondent's household. The testimony also indicated that Kara would receive religious training in either household. If custody were modified, Kara would be taken away from a place she had lived almost exclusively since birth to a town some 500 miles away. Kara would leave behind both friends and family in Effingham. While Kara had made some friends in Marietta over the summer, they were not the types of relationships she had developed over her many years in Effingham.

■ We find it interesting that petitioner had lived with Dennis Wilson for four years prior to respondent's petition seeking a modification in custody, which was sought only after petitioner requested an increase in child support. There was no evidence presented that petitioner's relationship with Dennis Wilson had harmed Kara in any way or that it would necessarily harm her in the future. After a review of the evidence in the instant case, as well as a review of

the trial court's orders, we cannot say that the trial court erred in finding that respondent failed to meet his burden and refusing to transfer custody to respondent. On the contrary, we find that the trial court was well within its discretion to allow petitioner to retain custody of Kara. Under the circumstances presented here, we find that the trial court did not err in denying respondent's counterpetition for custody.

■ The next issue we are asked to consider is whether the trial court's order increasing the amount of child support from $175 per month to $90 per week was against the manifest weight of the evidence. Respondent contends that petitioner failed to prove any increase in the needs of Kara, failed to prove the sum of $175 per month was insufficient to meet the needs of Kara, and, thus, failed to prove any substantial justification for an increase of child support to 20% of respondent's net income. Petitioner responds that under section 510(b) of the Act, she is entitled to a one-time increase to 20% of respondent's net income. (Ill. Rev. Stat. 1989, ch. 40, par. 510(b).) However, we agree with respondent that we cannot review the trial court's increase based upon section 510(b) of the Act, as section 510(b) was not alleged in the petition for modification, nor was it ever argued before the trial court. The general rule is that questions not raised in the trial court are deemed waived and cannot be argued for the first time on appeal. (*In re Marriage of Rodriguez* (1989), 131 Ill. 2d 273, 279, 545 N.E.2d 731, 733.) Nevertheless, we find sufficient support for the trial court's increase and refuse to reverse the trial court on this issue.

Section 510(a) of the Act allows for modification of child support orders only upon a showing of substantial change in circumstances. (Ill. Rev. Stat. 1989, ch. 40, par. 510(a).) The burden of proof is on the party who seeks the modification. (*Gaines v. Gaines* (1969), 106 Ill. App. 2d 9, 245 N.E.2d 574.) The relevant factors to be considered are clearly set forth in *In re Marriage of Daniels* (1983), 115 Ill. App. 3d 173, 450 N.E.2d 361:

> "We believe that section 510(a) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1981, ch. 40, par. 510(a)) and the case law make clear that the paramount consideration of the court is to determine whether a substantial and material change has intervened since the original support allowance was made. While the needs of the child and the financial status of the noncustodial parent are important factors in making the decision, the court must also consider the financial resources of the child, the financial status and needs

of the custodial parent, the standard of living the child was accustomed to prior to dissolution, and the physical and emotional needs and educational needs of the child. (Ill. Rev. Stat. 1981, ch. 40, par. 505; *In re Marriage of Raidbard* (1980), 87 Ill. App. 3d 158, 160, 408 N.E.2d 1021, 1023.)" (115 Ill. App. 3d at 176, 450 N.E.2d at 362-63.)

We also note that a trial court's decision to modify child support payments cannot be disturbed unless there is a clear abuse of discretion. *In re Marriage of Bussey* (1985), 108 Ill. 2d 286, 296, 483 N.E.2d 1229, 1233.

Here, the trial court specifically found:

"7) That Father's net income for 1989 was approximately $27,000 after adjusting for income tax refund and FICA. Based on the uncontradicted statements in his financial affidavit his anticipated 1990 net income is $28,330 and his net should increase in 1991 by a minimum of $600/year if he is no longer required to maintain medical insurance on Kara. Father's income has increased substantially since the date of the Dissolution due to his willingness to relocate twice out of the state of Illinois. As a result he has become vulnerable to an increase in child support which has, in fact, been sought by the Mother. This should be a two-edged sword however. Accordingly, the costs of transporting the child to the state of Georgia which is for her benefit must, in equity, be considered in setting the child support. Similarly, the evidence is uncontradicted that the cost of living in Marietta, Georgia is substantially higher than in Effingham and part of the substantial drain on Father's income, mortgage payments, is a partial benefit to Kara during summer visitation. The Court finds 20% of Father's net income for 1991 to be approximately $111/week. That Mother has substantial income and her household expenses are shared with Dennis Wilson, and that Father has substantial debts. That based on the factors hereinabove set forth, commencing January 04, 1991 and each Friday thereafter Father should pay the sum of $90/week in child support, said payments to be abated during Kara's six weeks of summer visitation with her father, and Father should be granted the dependency deduction for 1991 and succeeding years provided all child support and his share of medical bills are timely paid."

We find the trial court's analysis sound. The trial court did not strictly adhere to guidelines such as the 20% of net income found in

section 505(a) of the Act. (Ill. Rev. Stat. 1989, ch. 40, par. 505(a).) Rather, the trial court looked at all relevant factors and ordered an increase to $90 per week. The trial court rightly ordered petitioner to include Kara on her health insurance plan. Kara's addition would not cost petitioner any extra money and would save respondent $50 per month. Arguably, respondent could have been ordered to pay more than $90 per week in child support and could have been ordered to keep Kara on his health insurance. We are unconvinced by respondent's arguments on this issue, including his argument that since he is paid bimonthly he should not be ordered to make weekly payments, and find the trial court was within its discretion to order an increase in child support to $90 per week.

The third issue we are asked to address is whether the trial court's order finding respondent in contempt for failing to return Kara at the end of her six-week period of summer visitation was against the manifest weight of the evidence. Respondent contends that he presented evidence that he had reasonable justification for his actions and, therefore, his keeping Kara beyond the six-week period did not constitute wilful and contumacious conduct. Additionally, respondent contends that no evidence was presented by petitioner that a demand to return Kara was made prior to her filing the motion for contempt. We agree.

There are four types of contempt—direct, indirect, civil, and criminal. All four were defined in *Eden v. Eden* (1975), 34 Ill. App. 3d 382, 340 N.E.2d 141:

> "(1) indirect contempt which entails a contumacious act committed outside the presence of the court (*e.g., People v. Javaras* [(1972)], 51 Ill. 2d 296, 300, 281 N.E.2d 670, 672; *Kay v. Kay* [(1974)], 22 Ill. App. 3d 530, 318 N.E.2d 9 (abstract opinion)); (2) direct contempt which involves an act committed in the presence of the court (*e.g., People v. Clark* [(1972)], 4 Ill. App. 3d 301, 303, 280 N.E.2d 723, 724; *Kotowski v. Kotowski* [(1971)], 3 Ill. App. 3d 231, 233, 278 N.E.2d 856, 857); (3) civil contempt which consists of failing to do something ordered by the court, usually for the benefit of the opposing litigant (*e.g., People ex rel. Kazubowski v. Ray* [(1971)], 48 Ill. 2d 413, 416, 272 N.E.2d 225, 226, *cert. denied* [(1971)], 404 U.S. 818, 30 L. Ed. 2d 118, 92 S. Ct. 78; *Sullivan v. Sullivan* [(1973)], 16 Ill. App. 3d 549, 551-52, 306 N.E.2d 604, 605); and (4) criminal contempt which comprises conduct directed against the dignity and authority of the court or the judge acting judicially (*e.g., Sullivan v. Sullivan,*

16 Ill. App. 3d 549, 551, 306 N.E.2d 604, 605; *George v. Toal* [(1972)], 6 Ill. App. 3d 329, 286 N.E.2d 41 (abstract opinion))." (34 Ill. App. 3d at 388, 340 N.E.2d at 146.)

The instant case of alleged contempt falls into the category of indirect civil contempt. Our supreme court has generally defined contempt of court as conduct calculated to embarrass, hinder, or obstruct a court in its administration of justice or lessening the authority and dignity of the court or bringing its administration of law into disrepute. (*In re Estate of Melody* (1969), 42 Ill. 2d 451, 452, 248 N.E.2d 104, 105.) It is this element we find missing in the instant case. See *Roberson v. Liu* (1990), 198 Ill. App. 3d 332, 338, 555 N.E.2d 999, 1003.

■ In the instant case, there was testimony that respondent had kept Kara beyond the six-week visitation period in the past without incident. Further, in this instance, Kara expressed her desire to remain with respondent. All parties had filed for some type of modification. While we do not condone respondent's actions, we find it possible that respondent believed he could keep Kara until the petitions and counterpetitions had been heard without rebelling against the court, especially in light of the fact that petitioner never made a direct demand to respondent to return Kara prior to filing her motion for contempt. Petitioner admitted during cross-examination that no such demand was made:

"Q. Now, after July 29th, did you ever talk with Don?

A. No, I talked to him, I believe, on July 29th, and that's when he informed me that she was in Florida with Judy's daughter so he had to call her in Florida.

Q. Isn't it true that at no time did you ever demand of Don that he return Kara to you after July 29th?

A. No, I asked Kara to ask her dad when he was bringing her home and Don's wife informed me that that was up to him.

Q. So you did talk with Judy, is that correct?

A. Kara asked Judy. I didn't talk to Judy directly.

Q. My question was though, did you ever tell Don Fuesting after you learned that Kara wanted to stay with him, that he should bring her back to you?

A. No, sir."

Given these circumstances, we hereby vacate the contempt finding entered against respondent. Our resolution of the third issue also resolves the fourth issue raised by respondent, whether the trial court's order requiring respondent to pay $400 in attorney fees on

behalf of petitioner for failing to comply with the terms of the previously entered separation agreement was against the manifest weight of the evidence. Because we have found that the trial court erred in finding respondent in contempt, we reverse the trial court's order requiring respondent to pay petitioner $400 for her attorney fees incurred as a result of filing a petition for contempt citation against respondent.

For the foregoing reasons, the order of the circuit court of Effingham County is affirmed in part, vacated in part, and reversed in part.

Affirmed in part; vacated in part and reversed in part.

RARICK and CHAPMAN, JJ., concur.