*In re* MARRIAGE OF TRACY B. NOLTE, Petitioner-Appellee, and LAURA A. NOLTE, Respondent-Appellant.

Third District   No. 3—92—0606

Opinion filed February 25, 1993.

Matthew T. Gubbins, of Morgan, Regas, Glazar & Gubbins, of Kankakee, for appellant.

Roger C. Elliott and Paul F. Michel, both of Elliott & McClure, of Momence, for appellee.

JUSTICE LYTTON delivered the opinion of the court:

Tracy Nolte (Tracy), the father, filed a petition requesting that an existing child custody judgment be modified to change custody from the mother, Laura Nolte (Laura). Laura filed a counterpetition seeking an increase in child support. The trial judge granted the father's custody petition and terminated his support obligations. We reverse the circuit court's decision on the child custody issue, and reverse and remand for further proceedings on the support issue.

On February 3, 1988, Tracy Nolte and Laura Nolte were granted a judgment for dissolution of marriage. Pursuant to a marital settlement agreement, Laura was awarded sole custody of the children, Bryan and Sarah. Tracy was awarded reasonable visitation.

On January 17, 1991, Tracy Nolte filed a petition to modify the judgment, requesting that he be awarded custody of the children. The petition alleged three bases for modification: (a) that the respondent was cohabiting with an unrelated male; (b) that the petitioner had remarried and was better able to provide for the children; and (c) that it was in the best interests of the children that custody be awarded to the petitioner. Laura then filed a petition to modify child support, alleging that there had been a substantial change in the father's income and in the financial needs of the children.

At the hearing, the petitioner called Laura as an adverse witness. Since her divorce, Laura has lived in three different locations, in addition to a three-month stay at her mother's home. Laura testified that her present residence consists of a rented house with two large bedrooms upstairs.

Laura has lived with a man named Edward "Mike" Kaminski for two years. For a period of time, Kaminski's brother lived with the couple.

At their present residence, Laura does not sleep with Kaminski when the children are present. She sleeps in one room with her daughter. Her son sleeps in another room. Kaminski sleeps on the couch downstairs. At a prior residence, Laura and Kaminski slept together.

Since her divorce, Laura held several part-time jobs, averaging 12 to 20 hours per week and paying $4.50 per hour. Between jobs, Laura received unemployment compensation. At the time of the hearing, Laura was unemployed and receiving food stamps, but she had interviewed for a job a few days before. Laura testified as to her monthly expenses and stated that Kaminski shared expenses with her. The children's insurance has been provided through their father's employment.

Laura testified that Tracy Nolte is a good father who exercises visitation, but that she wants the children to live with her.

The next witness was petitioner Tracy Nolte. Tracy testified that Laura Nolte and he had two children, Bryan and Sarah. Nolte testified that he was remarried in October of 1990. When exercising visitation on the weekends, he has taken the children fishing, shopping and on other family activities.

Tracy was aware that Laura was living with a man, and Tracy had expressed his displeasure about this. Laura told him to mind his own business.

Nolte testified that Laura was a good mother. He has never heard the children complain about her. However, Tracy testified that he desired custody of the children. He felt that he could better provide for them, as both he and his new wife work.

On cross-examination, Tracy testified that he had never been denied visitation. In claiming that he could better provide for the children, Tracy meant that he could demonstrate employment stability for the children. Laura was receiving money from Kaminski to help meet expenses. Since the children had been insured through Tracy's employment, this would not be affected by a change in custody. Tracy was not alleging physical or mental abuse. The children were always clean, well fed, and clothed.

Tracy testified that he and his wife rent a two-bedroom house. He also testified as to his financial status, for purposes of the petition to modify support.

The next witness was Tracy's new wife, Kim Nolte (Kim). Kim testified that she and Tracy rent a two-bedroom house, with a living room, kitchen and dining room. Bryan and Sarah have visited them every other weekend. When they stay over night, the children share a room with separate beds.

Since Tracy works many hours, Kim is responsible for the care of the children, including bathing and eating. Kim also takes the children to football practice, the library, religious classes and church. She testified that she loves the children.

On cross-examination, Kim stated that Tracy works most weekends. Kim testified that Tracy's schedule allows him one full weekend off every fifth week.

The next witness was Laura Nolte, testifying on her own behalf. Laura resides with her two children and Edward Kaminski. Her residence consists of a rented portion of a big house, with two large bedrooms upstairs, and a large living room, kitchen and bathroom downstairs. Laura and her daughter share one room, and her son has his own room. Kaminski sleeps downstairs on the couch.

On school days, Laura wakes the children up, makes their breakfast, and sees that they get out the door. Bryan takes a bus, but Laura drives Sarah to and from her school. When the children return home, Laura sees that they do their homework, play, have dinner, bathe, and go to bed. Kaminski does not prepare the children's meals, nor does he attend to their personal hygiene.

Both children participate in school activities. Bryan is in football, and Sarah is in cheerleading. On the weekends, Laura takes them bowling, to the theater, and for walks to the park. Both children like Kaminski and refer to him as "Mike." Emotionally, Sarah is sentimental and shy, and tends to stay by her mother's side. Bryan is outgoing. Sarah is a straight A student, while Bryan is an A and B student. Sometimes Kaminski will correct the children, but only Laura disciplines them. Occasionally they are required to stand in the corner and Laura spanks them "every once in a while." Laura and the children are Catholic, and they attend church as regularly as possible. When the children spend weekends with their father, they attend a different church.

According to Laura, Kaminski has never struck either the children or her. Laura testified that Kaminski is self-employed and provides financial assistance.

On cross-examination Laura stated that, about a month before, Kaminski's brother had ceased living with them and moved back to

Texas. The brother had lived in Illinois for a couple of months while he started a business and got back on his feet.

Laura testified that Kaminski is a dry-wall installer. Kaminski is married, but has been separated from his wife for the past five years. The divorce has never been finalized. For purposes of the petition to modify support, Laura testified as to her financial status.

The trial judge also conducted *in camera* interviews with the children. Sarah, age eight, stated that she felt sorry for her mom having to deal with the custody fight. She didn't feel sorry for her dad because he started the fight for custody. Sarah stated that when they visit their father, she and Bryan share a room but have separate beds. Sarah also stated that Kaminski is "good with us." Sarah testified that, at her mother's home, she and her mom share a room, Bryan has his own room, and Kaminski sleeps on the couch.

According to Sarah, Kaminski's brother had slept in a separate bed in Bryan's room, but the brother was no longer living there. In a prior house, Sarah and Bryan had their own room and her mom and Mike shared a room.

Sarah gets straight A's in school and doesn't have a boyfriend. Sarah says that she wants to live in her mom's house, "I just feel I should be with my mom. *** [M]y dad is the one who walked out on us."

Bryan, age 11, stated that he knew he was at court because his parents were fighting for custody. His mom had explained that their dad was trying to get custody and that both she and their father love them. Bryan stated that he liked school and that his mother and father took the children to church. If given his choice, Bryan said that he wanted to live with his mom, because "she raised me for all of them years. I just want to keep it like it is." If he had been living with his father for years, he would want to stay with him. Bryan has a good time with his mother and with his father. He told the judge that he loved both parents. Both Mike Kaminski and Kim Nolte where good to him.

After hearing the evidence, the parties submitted written briefs. The trial judge then issued a written memorandum and order. The judge found that the mother had been living with another man to whom she was not married and that this was contrary to the best interest of the children. The judge also stated that the mother's residence was insufficient to accommodate the mother, her boyfriend, the children, "and anyone else who may be staying with them on and off, such as her boyfriend's brother." The trial judge concluded:

"It would appear to the Court that it would be in the best interest of the children to be placed in the custody of the father where they will be in a more appropriate family unit and with more appropriate accommodations. All in all, it would appear that the father can provide an environment that would be better for the children's safety, mentally and morally."

The judge terminated the mother's custody rights, terminated the father's support payments, and reserved the issue of the mother making support payments. The judge also ordered that the mother be awarded reasonable visitation but no overnight visitation under her current living conditions.

Laura Nolte then filed a motion requesting that the trial judge reconsider his ruling. The motion alleged that, in the absence of any evidence of adverse effect upon the children, the trial court (a) erred by ruling that the mother's cohabitation was contrary to the best interest of the children, (b) failed to consider all of the circumstances of the parties, (c) failed to consider the time that each party could spend with the children, (d) failed to give sufficient weight to the wishes of the children, and (e) failed to consider the adverse effects of a change of custody and move to a new community. In the alternative, the motion and supporting affidavits requested a new hearing on the grounds that the mother had ceased cohabiting with Kaminski and that the children had continued to reiterate their desire to live with their mother. The trial judge denied the mother's requests for reconsideration and a new trial, and the mother filed this appeal.

In this case, the father's petition to modify custody was brought pursuant to Section 610 of the Illinois Marriage and Dissolution of Marriage Act. (Ill. Rev. Stat. 1989, ch. 40, par. 610.) Section 610(b) provides in pertinent part:

"The court shall not modify a prior custody judgment unless it finds by clear and convincing evidence, upon the basis of facts that have arisen since the prior judgment or that were unknown to the court at the time of entry of the prior judgment, that a change has occurred in the circumstances of the child or his custodian *** and that the modification is necessary to serve the best interest of the child." (Ill. Rev. Stat. 1989, ch. 40, par. 610(b).)

Section 610(b) reflects an underlying policy favoring finality of child custody judgments and creating a presumption in favor of the present custody so as to promote stability and continuity in the child's custodial and environmental relationships. (*In re Marriage of Fuesting* (1992), 228 Ill. App. 3d 339, 344, 591 N.E.2d 960.) Changed conditions

alone do not warrant modification in custody without a finding that such changes affect the welfare of the child. (*Fuesting*, 228 Ill. App. 3d at 344.) Custody cannot be modified unless there is a material change in the circumstances of the child related to the child's best interests and unless the evidence establishes either that the custodial parent is unfit or that the change in conditions is directly related to the child's needs. (*In re Marriage of Eldert* (1987), 158 Ill. App. 3d 798, 805, 511 N.E.2d 945.) Once the trial court has made its determination, that decision will not be disturbed on appeal unless that decision was an abuse of discretion or contrary to the manifest weight of the evidence. *Eldert*, 158 Ill. App. 3d at 805.

■■ In the case at bar, it appears that the trial judge failed to apply the correct burden of proof. As noted above, section 610(b) of the Illinois Marriage and Dissolution of Marriage Act requires the existence of "clear and convincing evidence" that a change has occurred in the circumstances of the child or his custodian and that modification is necessary to serve the best interest of the child. (Ill. Rev. Stat. 1989, ch. 40, par. 610(b).) The clear and convincing standard requires a high level of certainty. Clear and convincing evidence is considered to be more than a preponderance while not quite approaching the degree of proof necessary to convict a person of a criminal offense. *In re Marriage of Wechselberger* (1983), 115 Ill. App. 3d 779, 786, 450 N.E.2d 1385.

Nowhere in the record did the judge find the presence of clear and convincing evidence. The judge merely found that the father could provide a "more appropriate family unit" and "more appropriate accommodations." Thus, it appears that the judge erred by applying the preponderance standard.

Under the facts of this case, however, we need not remand this cause for further proceedings on the custody issue. After examining the record, we find that the petitioning father failed to meet his burden of proof.

■■ First, we find that the father was not entitled to a change of custody on the basis that his ex-wife was cohabiting with a man who was not her husband. While this case was pending in the circuit court, petitioner encouraged the judge to base his decision upon the Illinois Supreme Court's ruling in *Jarrett v. Jarrett* (1979), 78 Ill. 2d 337, 400 N.E.2d 421. In *Jarrett*, our supreme court affirmed the decision of the trial judge to modify custody because of the custodial parent's cohabitation. The supreme court noted that households consisting of an unmarried man and woman constituted a small percentage of the adult population. Such actions also constituted violations of the forni-

cation statute and prevailing public policy. (*Jarrett*, 78 Ill. 2d at 345-46.) Additionally, the court noted that the respondent continued to cohabit while the case was on appeal. *Jarrett*, 78 Ill. 2d at 347.

Initially, the *Jarrett* decision was seen by some as creating a conclusive presumption that harm to children stemmed from the cohabitation of a custodial parent. (See *Jarrett*, 78 Ill. 2d at 352 (Goldenhersh, C.J., dissenting, joined by Moran, J.).) Four years later, however, in *In re Marriage of Thompson* (1983), 96 Ill. 2d 67, 78, 449 N.E.2d 88, *cert. denied* (1983), 464 U.S. 895, 78 L. Ed. 2d 232, 104 S. Ct. 242, the Illinois Supreme Court held:

> "The *Jarrett* case does not establish a conclusive presumption that, because a custodial parent cohabits with a member of the opposite sex, the child is harmed. No such presumption exists in this State."

The supreme court noted that it did not condone the custodial father's conduct, which included forcibly obtaining custody of his son and returning him to Illinois, spending weekends with a woman, and threatening to reveal nude pictures of that woman if she testified against him. Nonetheless, the supreme court held that such evidence was outweighed by evidence that a healthy father-son relationship existed and the son was doing well in his father's custody. *Thompson*, 96 Ill. 2d at 79.

On several occasions since *Jarrett*, Illinois courts of review have affirmed the rights of parents to retain custody despite evidence of cohabitation or other sexual conduct. In *Brandt v. Brandt* (1981), 99 Ill. App. 3d 1089, 1104, 425 N.E.2d 1251, the appellate court stated that "a decision directing a change of custody must be buttressed on more than the fact that the custodial parent resides with a member of the opposite sex." Noting that the Illinois Marriage and Dissolution of Marriage Act provides that "[t]he court shall not consider conduct of a present or proposed custodian that does not affect his relationship to the child" (Ill. Rev. Stat. 1989, ch. 40, par. 602(b)), the appellate court stated that it is not the trial court's function to approve or disapprove the parent's conduct, but only to determine its effect upon the children. *Brandt*, 99 Ill. App. 3d at 1105.

In *Cooper v. Cooper* (1986), 146 Ill. App. 3d 943, 497 N.E.2d 805, the court noted evidence of the custodial mother's sexual encounters and flirtatious activities. Nonetheless, the court affirmed the mother's right to custody, stating that although the her activities were immature and not to be condoned, the father had failed to show that these actions affected the child's relationship with the mother. Moreover, the appellate court stated that, even if the mother's conduct did affect

the child, this was but one factor to be considered by the trial court. *Cooper*, 146 Ill. App. 3d at 947.

In *In re Marriage of Cripe* (1989), 183 Ill. App. 3d 37, 538 N.E.2d 1175, the appellate court reversed a modification of custody which was based upon the cohabitation of the custodial mother. In light of the mother's intent to marry her paramour, the appellate court held, the trial judge's order changing custody was against the manifest weight of the evidence.

Finally, in *In re Marriage of Fuesting* (228 Ill. App. 3d at 345), the appellate court reiterated that a custody decision must be based on the totality of the circumstances, and not just the custodial parent's cohabitation.

Illinois courts require a petitioner seeking a change of custody to show the relevance between a custodial parent's alleged misconduct and the children's best interests. When a party offers evidence regarding repeated changes in residence, employment or babysitters, the offering party must be prepared to show that the conduct has adversely affected the child. (*In re Marriage of Pease* (1982), 106 Ill. App. 3d 617, 620, 435 N.E.2d 1361.) No less should be required from a party seeking to introduce evidence of an ex-spouse's sexual conduct and personal relationships.

Based upon the record presented, it appears that Laura's cohabitation with Mike Kaminski has had no adverse impact upon the children. Indeed, Bryan and Sarah appear to be exceptionally well-adjusted. Both receive good grades at school, express love for both parents, and get along with Kim Nolte and Mike Kaminski. Neither child has displayed any behavioral problems. And while Laura Nolte is required to occasionally discipline the children, petitioner testified that he never heard his children complain about their mother.

Both children were given an opportunity to express their preferences during an *in camera* hearing, and both expressed a desire to stay with their mother. While a child's preferences need not be deemed as controlling, the preferences of mature children should be given considerable weight when they are based on sound reasoning. (*In re Marriage of McCune* (1980), 86 Ill. App. 3d 311, 319, 408 N.E.2d 319.) Bryan stated, "she raised me for all of them years. I just want to keep it like it is." In his own words, Bryan reiterated the policy favoring finality of child custody judgments and the presumption in favor of the present custody, to promote stability and continuity in the child's custodial and environmental relationships. The petitioner has failed to prove that the custodial mother's cohabitation required a change of custody.

■ Second, we find that the father failed to establish by clear and convincing evidence that he was better able to provide for the children. Undoubtedly Tracy is in a superior financial position than Laura. However, the relative affluence of one parent over another, without more, is not a sufficient cause to transfer custody. *Carroll v. Carroll* (1978), 64 Ill. App. 3d 925, 930, 382 N.E.2d 7.

According to Tracy Nolte, the children's insurance is unaffected by the custody decision. The record also indicates that the two parties' residences are similar. Both the mother and the father rent two-bedroom houses. Each residence appears to have a similar number of rooms, though the record reflects that the rooms at Laura's residence are large.

Moreover, since Tracy holds two jobs, he is not able to spend much time with the children. Indeed, he is able to spend an entire weekend with the children only once every five weeks. When Tracy is at work, responsibility for the care of the children falls upon his new wife. In contrast, Laura Nolte spends much more time and effort in her children's daily lives. Laura makes sure that the children are ready for school every day, and she drives Sarah to and from her school. She also takes the children to school activities as well as a variety of family activities. Laura also prepares the meals, tends to the children's personal hygiene, and has sole responsibility for disciplining the children.

Nevertheless, Tracy asserts that he is better able to serve as a role-model of employment stability. While this is certainly an important function of parenting, the father can fulfill this role without a change in custody. Tracy has failed to demonstrate that he was better able to provide for the children.

Third, petitioner failed to prove that modification was in the best interest of the children. As in all child custody cases, the paramount issue in this case is the welfare of the children. (*Fuesting*, 228 Ill. App. 3d at 344.) After reviewing all of the evidence in this case, however, we find no clear and convincing evidence supporting the father's contentions.

Tracy's "best interest of the children" argument, and the trial judge's findings on this claim, appear to rest on five points: (a) the father was in a better financial position than his ex-wife; (b) the father was a better role model *vis-a-vis* employment stability; (c) the accommodations at the father's residence were superior; (d) the mother had changed residences on several occasions; and (e) for a period of time, Mike Kaminski's brother had lived with Kaminski, Laura and the children. The first three of these contentions have already been

addressed. Thus, we turn to petition's fourth assertion, regarding changes in the custodial parent's residence.

Continuity in lifestyle and environment is important to the healthy and normal development of children. (*Mason v. Mason* (1977), 49 Ill. App. 3d 775, 364 N.E.2d 705.) Changes in the custodial parent's residence and employment may be relevant factors in determining the children's best interest. These factors are not controlling, however, unless they adversely affect the children. *Pease*, 106 Ill. App. 3d at 620.

■■ In the case at bar, the record is devoid of any evidence that the mother's changes in residence adversely affected the children. Although the ill effects of such changes need not manifest themselves before a court can alter the children's custody (*Pease*, 106 Ill. App. 3d at 620-21), nothing in the record suggests that the children's present welfare is seriously endangered. There is also a lack of evidence that the children's welfare will be endangered in the future.

Petitioner's last point in his "best interest of the children" argument is that Mike Kaminski's brother also lived in Laura's residence. It is important to stress that there was no evidence or claim of any impropriety or misconduct involving this brother. Petitioner's argument is simply that Laura's residence could not accommodate all five people living there. The record indicates, however, that Kaminski's brother lived in the house for a period of a few months while he started a business. The brother had moved back to Texas more than a month before the trial judge's ruling on the custody petition. Permitting a relative to reside in one's home is not without precedent. (See *Thompson*, 96 Ill. 2d at 72.) Since this arrangement had already been terminated, and there existed no reason to believe that the situation will recur, a change in custody was not warranted. Accordingly, the trial judge erred in changing custody from Laura Nolte to Tracy Nolte.

■■ It should also be noted that Laura filed a petition to modify child support. In light of the order changing custody, the trial judge did not rule on Laura's motion. Since we reverse the decision below on the custody issue, the trial court must now rule on the mother's petition for additional support. As both parties note in their briefs, the mother has ceased her cohabitation and assumed responsibility for costs previously shared with Kaminski. We remand with instructions that the trial judge conduct a new hearing on the support issue only.

■■ Finally, because of the nature of this case and the fact that the children have been erroneously in the custody of their father for an extended time, we hereby direct the clerk of the appellate court to

issue the court's mandate herein *instanter* and contemporaneously with the filing of this opinion. We so order pursuant to authority granted us by Supreme Court Rule 368(a). 134 Ill. 2d R. 368(a); *Cripe*, 183 Ill. App. 3d at 45-46.

For the foregoing reasons, the judgment of the circuit court of Kankakee County is reversed on the issue of child custody. The cause is reversed and remanded on the issue of child support for further proceedings consistent with this decision.

Reversed and remanded.

McCUSKEY, P.J., and SLATER, J., concur.