*In re* MARRIAGE OF DAWN K. DAVIS, n/k/a Dawn K. Heinrich, Petitioner-Appellant, and CRAIG DAVIS, Respondent-Appellee.

Third District   No. 3—02—0555

Opinion filed June 26, 2003

HOLDRIDGE, J., dissenting.

Edward J. Kuleck, Jr., of Ottawa, for appellant.

Rebecca Leynaud Zywica, of Law Offices of Leynaud & Leynaud, of Peru, for appellee.

JUSTICE LYTTON delivered the opinion of the court:

The petitioner, Dawn Heinrich, and the respondent, Craig Davis, were divorced in 1999. Custody of their daughter Kirsten was set by a joint parenting agreement. Dawn later filed a petition to modify Kirsten's visitation schedule and to resolve where Kirsten should attend school. The trial court determined that Kirsten should attend school in Ottawa, Illinois. The trial judge refused to hear evidence on the motion for modification of the visitation schedule based on his opinion that no material change in circumstances unknown to the parties at the time of the joint parenting agreement had occurred. Dawn appeals, arguing that the trial judge abused his discretion by not addressing the visitation issue. After careful consideration, we affirm in part, reverse in part, and remand for further proceedings.

When Dawn and Craig divorced, Kirsten was almost three years old. At the time of the dissolution, Dawn resided in Ottawa, Illinois, and Craig resided in Granville, Illinois. The joint parenting agreement

provided that custody would be split between the parties as follows: Kirsten was to reside with Dawn from 4 p.m. Monday until 4 p.m. Wednesday. From 4 p.m. Wednesday until 4 p.m. Friday, she was to reside with Craig. From 4 p.m. Friday until 4 p.m. Monday, Kirsten was to reside with Dawn. The following week, the visitation days were reversed, with Craig having custody on Monday through Wednesday and Friday through Monday, and Dawn having custody from Wednesday through Friday. The effect of the custody schedule was that Kirsten resided with each parent 7 days of every 14. The agreement further provided that each parent was the custodial parent of Kirsten during his or her time with her.

Additionally, a provision in the agreement provided that if the parties could not agree where Kirsten was to go to school by May 1 of the year she was to begin school, then either party could petition the court to determine where she would go to school. Nothing in this provision discussed a change in the custody arrangement once the court made a determination on the school issue.

Dawn filed a petition to modify the joint custody agreement on January 9, 2002. The petition requested that the court grant primary physical custody of Kirsten to Dawn so that when Kirsten began attending school in the fall she would have a primary residence. Craig filed a motion to dismiss, arguing that there was no change in circumstance that was not contemplated by the parties at the time of the divorce. The trial court agreed and dismissed the petition without a hearing.

On May 20, 2002, Dawn filed a petition to have the trial court determine which school Kirsten should attend and to modify visitation. In this petition Dawn stated that she was a stay-at-home mother and that Kirsten had numerous ties both to the community and to other children that would be attending the same grade school in Ottawa. Dawn also asserted that if the court determined that Kirsten would attend school in Ottawa, the court should modify the visitation so that Kirsten spent more time during the week in Ottawa than the present schedule allowed. In response, Craig filed a motion to dismiss, asserting that this was simply another attempt to modify custody.

At the hearing on the petition, the trial judge repeatedly stated that the current custody arrangement was not in Kirsten's best interest. He found that attending school was a change in circumstances. However, based on the provision regarding court intervention about the decision of which school to attend, the judge found that the circumstance was contemplated by the parties at the time they entered the joint parenting agreement. As a result, the judge determined that under the Illinois Marriage and Dissolution of Marriage Act (Act) (750

ILCS 5/101 *et seq.* (West 2000)), he had no authority to hold a hearing on the custody modification. Therefore, he granted Craig's motion as to the visitation modification, and the matter proceeded to a hearing on the school determination.

At the hearing, Dawn presented evidence that Kirsten had a sibling and friends who would be attending school in Ottawa. Dawn testified that she was a stay-at-home mom, and she would take Kirsten to school every day and be home when Kirsten arrived from school.

Craig testified that he had a flexible employment schedule, and he would be able to be home when Kirsten arrived from school if she attended school in Granville. Currently, Kirsten did not have any friends who would be attending the Granville school. He stated that he had looked on various websites at the "school report cards" created by the state, and that Granville schools scored better than Ottawa schools in several areas. The school report cards were not entered as evidence.

The trial judge determined that Kirsten should attend school in Ottawa. The judge further ordered that on the days she was residing with Craig, he was to bring her to school and Dawn was to pick her up after school and return her to Craig's custody. During the hearing the judge again expressed his belief that the custody arrangement was not in Kirsten's best interest.

Dawn contends that the court erred in failing to hold a hearing on the motion to modify the custody agreement. The dismissal of a petition to modify custody is reviewed for an abuse of discretion. *In re Marriage of Fuesting*, 228 Ill. App. 3d 339, 591 N.E.2d 960 (1992).

■ The Act provides that custody may be modified only if the court finds that a change in circumstances has occurred due to facts that could not be ascertained at the time the parenting agreement was entered and that modification of custody will serve the best interests of the child. 750 ILCS 5/610(b) (West 2000). Additionally, there exists a strong presumption in favor of maintaining the status quo in custody arrangements. *In re Marriage of Nolte*, 241 Ill. App. 3d 320, 609 N.E.2d 381 (1993). The rationale behind this presumption is that stability is important in the lives of children. *Nolte*, 241 Ill. App. 3d 320, 609 N.E.2d 381. However, the overarching purpose of the Act is to promote the best interest of the children; therefore, once custody is before the court, it has broad discretion to modify custody in the child's best interests. *In re Marriage of Oros*, 256 Ill. App. 3d 167, 627 N.E.2d 1246 (1994).

■ When determining if there has been a change in circumstances, the trial court must look at the totality of the circumstances. *Nolte*, 241 Ill. App. 3d 320, 609 N.E.2d 381. The change in circumstances must directly affect the needs of the child. *In re Marriage of Diddens*,

255 Ill. App. 3d 850, 625 N.E.2d 1033 (1993). In some cases, the differences between the needs of a small child and the needs of that same child as an adolescent can be sufficient to constitute a change in circumstances. See *In re Marriage of Andersen*, 236 Ill. App. 3d 679, 603 N.E.2d 70 (1992). In other cases, the inherent instability of the custody agreement creates a situation where modification is in the child's best interests, even if it is difficult to find a precise change in circumstances. *Oros*, 256 Ill. App. 3d 167, 627 N.E.2d 1246.

◼ Here, the judge found that there was no change in circumstances that was not contemplated by the parties at the time of the custody agreement. Though he felt the agreement was no longer in Kirsten's best interest, he believed that the statute prevented him from holding a hearing regarding custody modification.

At the time the joint parenting agreement was entered, the parties did not know if they would agree on where Kirsten would attend school, and, if not, which school the court would order her to attend. Therefore, the court's decision that she attend school in Ottawa was a change in circumstances not clearly contemplated by the parties. Once the school problem was resolved, the custody agreement created instability for the child. This instability, in turn, created a change of circumstances permitting a hearing on modification under section 610(b). We believe a hearing on the issue of custody modification would best serve the underlying policy of the Act. See *Oros*, 256 Ill. App. 3d 167, 627 N.E.2d 1246. We hold that the trial court abused its discretion in dismissing that portion of the petition regarding custody without holding a hearing. We reverse the trial court's dismissal of the petition and remand this matter for a hearing to determine whether a change in custody would be in Kirsten's best interest. We note that if the court changes custody, the rights of both parties can be accommodated by setting an appropriate visitation schedule. By this opinion we make no decision regarding whether custody modification is in Kirsten's best interest.

The judgment is otherwise affirmed.

Affirmed in part and reversed in part; cause remanded.

BARRY, J., concurs.

JUSTICE HOLDRIDGE, dissenting:

Subsection 610(b) of the Illinois Marriage and Dissolution of Marriage Act states:

"The court shall not modify a prior custody judgment unless it finds by clear and convincing evidence, upon the basis of facts that

have arisen since the prior judgment or that were unknown to the court at the time of entry of the prior judgment, *** that a change has occurred in the circumstances of the child or either or both parties having custody, and that the modification is necessary to serve the best interest of the child." 750 ILCS 5/610(b) (West 2000). This provision outlines two requirements that must be satisfied before a court can modify a custody arrangement. First, there must be *clear and convincing evidence* that circumstances have changed in a way not foreseen when the arrangement was made. Second, modification must be necessary to serve the child's best interest.

In the instant case, the first requirement is clearly not satisfied. Although the parents did not know precisely where Kirsten would attend school when they made the custody arrangement, they obviously knew it would happen in either Ottawa or Granville. This knowledge renders the majority's analysis disingenuous. The court's order directing Kirsten to attend school in Ottawa simply did not create an unforseen change of circumstances (by any standard, let alone by clear and convincing evidence). In finding otherwise, the majority seems to be influenced by a conviction that a custody modification would serve Kirsten's best interest. This type of analysis commingles two requirements that the statute keeps distinct. I thus respectfully dissent.