2022 IL App (3d) 190631

Opinion filed June 8, 2022

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2022

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the Circuit Court |
| | ) | of the 14th Judicial Circuit, |
| JANELLE TRAPKUS | ) | Rock Island County, Illinois. |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | Appeal Nos. 3-19-0631 and 3-20-0005 |
| and | ) | Circuit No. 11-D-376 |
| | ) | |
| CHRISTOPHER TRAPKUS, | ) | |
| | ) | The Honorable |
| Respondent-Appellant. | ) | Kathleen Mesich, |
| | ) | Judge, presiding. |

_____

JUSTICE McDADE delivered the judgment of the court, with opinion.
Justices Daugherity and Schmidt concurred in the judgment and opinion.

_____

**OPINION**

¶ 1         The petitioner, Janelle Trapkus, and the respondent, Christopher Trapkus (Chris), married

in 2000 and divorced in 2013. In 2018, the parties filed cross-petitions for modification of the

dissolution judgment and other postjudgment orders. After a trial in 2019, the circuit court issued

a decision denying Chris's petition to modify parenting time, granting Janelle's petition to vacate

two rules regarding the scheduling of health care appointments and requiring the parties to

maintain a 10-foot distance from each other, and granting Janelle's request to vacate a rule prohibiting her from entering onto Chris's property. We affirm in part and reverse in part.

¶ 2                                      I. BACKGROUND

¶ 3        The circuit court's 2013 dissolution order allocated the physical care and custody of the parties' two children, P.T. (born March 13, 2004) and K.T. (born August 12, 2006), to Janelle and granted Chris certain visitation rights. A detailed holiday schedule was also enacted "ending at 8:00 a.m. the following day, or with transportation to school the following day, as the case may be, excepting Christmas." Notably, in ruling that Janelle would have physical care and custody of the parties' two children, the court found that joint legal custody was inappropriate due to the animosity existing between Janelle and Chris but that "as time goes by communication between the parties may improve, as the parties' animosity dissipates, such that the Court would entertain a future request for joint custody."

¶ 4        In July 2014, the circuit court entered an order that, *inter alia*, required Janelle to "endeavor to schedule all health care appointments for the parties' children for a time when both parents may appear and participate." To facilitate this requirement, Janelle was ordered to provide Chris with three available dates for medical appointments (hereinafter the Three-Appointment Rule).

¶ 5        On December 5, 2014, Janelle filed a petition to modify visitation and requested a ban on Chris's girlfriend, Kathleen, from attending any of the children's activities. Following an April 2015 evidentiary hearing, the circuit court denied the petition after finding no cause for the restriction. However, based on an agreement by the parties, the court entered the "10-foot Rule," which required the parties to remain at a distance of at least 10 feet from each other at all

2

extracurricular and other activities. The rule also applied to Janelle and Kathleen, who submitted to the court's jurisdiction for the limited purpose of instituting that rule.

¶ 6 In November 2016, after an evidentiary hearing on several pending motions, Janelle was found in indirect civil contempt of court for violating the 10-foot Rule on at least two occasions. The court also enjoined Janelle from entering onto Chris's property for any reason. The court further modified parenting time and ordered both parties to deliver the children to their extracurricular activities with their equipment 10 minutes before the activity's start time.

¶ 7 In January 2018, Chris filed a petition for modification, clarification, enforcement, and adjudication of contempt and other relief. Chris sought, *inter alia*, equal parenting time with the children, alleging that a substantial change of circumstances had occurred since the entry of the allocation judgment in 2013 in that (1) five years had passed and (2) the children had intermittently asked for more time with him. Chris also requested an order finding Janelle in contempt for failing to comply with the Three-Appointment Rule. Additionally, Chris alleged that the parties could not agree on the exact number of days in the summer vacation schedule. He requested an order clarifying the exact number of days in the summer vacation schedule to ensure that each party was receiving half of those days. He also sought compensatory parenting time for the periods during which he was sent out of the country to work during the year because Janelle would generally refuse to accommodate such requests by Chris.

¶ 8 In June 2018, Janelle filed her own petition for modification, enforcement, adjudication of contempt, and other relief. The petition sought, *inter alia*, a change in the holiday parenting schedule; the elimination of the Three-Appointment Rule, the 10-foot Rule, and the prohibition on her from entering onto Chris's property; and an order adjudicating Chris in contempt for failing to follow specific orders including the 10-foot Rule. Shortly thereafter, Janelle filed her

3

proposed parenting plan in conjunction with the parties' cross-petitions in which she suggested the parties alternate all significant holidays in an odd/even year allocation from 8 a.m. to 8 a.m. the following day for each holiday.

¶ 9    The circuit court heard evidence over three days on the parties' cross-petitions. Janelle testified, *inter alia*, that P.T was a freshman in high school and K.T. was in the seventh grade. Both children excelled in school and were involved in extracurricular activities. During the school year, Chris had alternate weekends, every other Monday, and overnights on Wednesdays. To accommodate her work schedule as a physical therapist, Janelle sometimes asked Chris to pick up the children on Fridays, to which he usually agreed. During the summer, Chris's parenting time included alternating weekends as well as Tuesday and Wednesday nights.

¶ 10    Janelle sought the elimination of the 10-foot Rule because it was difficult to adhere to in certain situations and because she believed it made the children uncomfortable. She also sought the elimination of the Three-Appointment Rule because it was overly burdensome to her as well as medical professionals. Janelle suggested that she alone should schedule the children's medical appointments. Further, she sought the elimination of the order prohibiting her from entering onto Chris's property, as doing so would normalize pickups and drop-offs by allowing her to pull into Chris's driveway. In that regard, Janelle noted that Chris had purchased a new house, which was set back farther than his previous house, and that when she parked on the street, she was in the way of Chris's neighbors. Chris wanted each of these rules to continue because he believed they helped alleviate confrontations between the parties.

¶ 11    Chris testified, *inter alia*, that he wanted more parenting time because the children were older, had matured, and were approaching a point at which he had a lot of experience to share with them, both from work and athletics. He wanted the relatively equal parenting time schedule

4

from the summer to apply to the entire year. Chris also stated that Janelle would rarely agree with his requests for additional parenting time. He wanted the 10-foot Rule, Three-Appointment Rule, and prohibition on Janelle entering onto his property to continue. He claimed that those rules have brought stability to the children's activities and have prevented conflict and embarrassing situations.

¶ 12    Both P.T. and K.T. testified *in camera*. When asked by the court if they would change anything about the parenting schedule, both children expressed the desire to see their parents equally during the week. P.T. was aware of the 10-foot Rule but said it did not impact P.T.'s parent-child relationships. K.T. felt personally responsible for the imposition of the 10-foot Rule because it was put into place after an altercation occurred between Janelle and Kathleen at one of K.T.'s extracurricular events.

¶ 13    On January 23, 2019, the circuit court issued its written decision. The court found that no substantial change in circumstances had occurred. However, the court noted that the statutory scheme allowed for modifications in certain situations when a change in circumstances had not occurred, although the court neither listed nor commented on whether any of those situations existed in this case.

¶ 14    In reviewing each of the statutory factors relevant in determining the best interest of children, the court found that the children were close to both parents, were well adjusted to their schools and church, and were healthy. The court also found that both parents were willing and able to place the children's needs above their own. The court did not comment on the *in camera* interview with the children to preserve their privacy, although it stated it accounted for their wishes in reaching its decision. The circuit court then denied Chris's motion for modification of parenting time. However, the court granted Janelle's motion for modification regarding holidays.

Specifically, the court found "compelling" Janelle's argument that Christmas Eve and Christmas should be grouped together, as should New Year's Eve and New Year's Day. In addition, the court eliminated overnights on holidays, except for Halloween, and eliminated visitation completely on Veteran's Day, Columbus Day, and the Saturday and Sunday following Thanksgiving.

¶ 15    In addition, the circuit court held that the Three-Appointment Rule was no longer necessary and granted Janelle sole responsibility for scheduling all medical appointments. The court also eliminated the 10-foot Rule as to Chris but did not modify it as to Kathleen because she had not been given proper notice. Finally, the court eliminated the rule enjoining Janelle from entering onto Chris's property, thereby allowing Janelle to pick up and drop off the children in Chris's driveway.

¶ 16    On February 25, 2019, Janelle filed a motion to lift the stay-away order as to Kathleen. Chris filed a response on April 22, 2019. Janelle's motion remains pending and undetermined.

¶ 17    On September 23, 2019, the circuit court entered its final judgment and order, which incorporated the court's January 23, 2019, decision. Chris appealed. On January 3, 2020, the circuit court issued a finding pursuant to Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016) regarding its September 23, 2019, final judgment and order.

¶ 18                                      II. ANALYSIS

¶ 19    On appeal, Chris argues that the circuit court erred when it (1) denied his petition for modification of parenting time, (2) modified the parties' allocation judgment by altering the holiday parenting schedule and vacating the Three-Appointment Rule and 10-foot Rule, and (3) vacated the order enjoining Janelle from entering onto Chris's property.

¶ 20                          A. Modification of Parenting Time

6

¶ 21        Chris's first argument on appeal is that the circuit court erred when it denied his petition

to modify the parenting-time allocation. Specifically, he argues that the court erroneously applied

section 610.5(c) of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS

5/610.5(c) (West 2016)) to the issue. Chris contends that the appropriate section to apply was

section 610.5(a) (*id.* § 610.5(a)).

¶ 22        When determining whether a circuit court applied the incorrect legal standard, we must

first ascertain the correct legal standard, which is a question of law subject to *de novo* review.

*In re Marriage of Izzo*, 2019 IL App (2d) 180623, ¶ 26. Additionally, Chris's argument requires

us to construe the Act, which we perform *de novo*. See *In re N.C.*, 2014 IL 116532, ¶ 50. "The

fundamental goal of statutory construction is to ascertain and give effect to the legislature's

intent, best indicated by giving the statutory language its plain and ordinary meaning." *Id.*

¶ 23        At all times relevant to this case, section 610.5 of the Act provided, in relevant part:

                    "(a) Unless by stipulation of the parties or except as

            provided in Section 603.10 of this Act, no motion to modify an

            order allocating parental decision-making responsibilities, not

            including parenting time, may be made earlier than 2 years after its

            date, unless the court permits it to be made on the basis of

            affidavits that there is reason to believe the child's present

            environment may endanger seriously his or her mental, moral, or

            physical health or significantly impair the child's emotional

            development. Parenting time may be modified at any time, without

            a showing of serious endangerment, upon a showing of changed

7

circumstances that necessitates modification to serve the best interests of the child.

(b) (Blank).

(c) Except in a case concerning the modification of any restriction of parental responsibilities under Section 603.10, the court shall modify a parenting plan or allocation judgment when necessary to serve the child's best interests if the court finds, by a preponderance of the evidence, that on the basis of facts that have arisen since the entry of the existing parenting plan or allocation judgment or were not anticipated therein, a substantial change has occurred in the circumstances of the child or of either parent and that a modification is necessary to serve the child's best interests."

750 ILCS 5/610.5(a) to (c) (West 2016).

¶ 24    While it may appear that section 610.5(a) contains a legal standard applicable to motions seeking the modification of a parenting-time allocation, a review of the evolution of the modification statutes shows otherwise. Prior to January 1, 2016, modification of a custody judgment was controlled by section 610 of the Act (750 ILCS 5/610 (West 2014)). In relevant part, section 610 provided that

"(a) Unless by stipulation of the parties ***, no motion to modify a custody judgment may be made earlier than 2 years after its date, unless the court permits it to be made on the basis of affidavits that there is reason to believe the child's present

8

environment may endanger seriously his physical, mental, moral or emotional health.

***

(b) The court shall not modify a prior custody judgment unless it finds by clear and convincing evidence, upon the basis of facts that have arisen since the prior judgment or that were unknown to the court at the time of entry of the prior judgment, that a change has occurred in the circumstances of the child or his custodian, or in the case of a joint custody arrangement that a change has occurred in the circumstances of the child or either or both parties having custody, and that the modification is necessary to serve the best interest of the child. The existence of facts requiring notice to be given under Section 609.5 of this Act shall be considered a change in circumstance. In the case of joint custody, if the parties agree to a termination of a joint custody arrangement, the court shall so terminate the joint custody and make any modification which is in the child's best interest. The court shall state in its decision specific findings of fact in support of its modification or termination of joint custody if either parent opposes the modification or termination." *Id.* § 610(a), (b).

Section 610(a) served as a gateway to an evidentiary hearing on a modification request if less than two years had passed since the entry of the custody judgment. See *Department of Public Aid ex rel. Davis v. Brewer*, 183 Ill. 2d 540, 554-56 (1998) (holding, *inter alia*, that "[s]ubsection (a)

9

thereby serves an important gatekeeping function, as only those cases which satisfy the initial procedural prerequisite contained in subsection (a) proceed to an evidentiary hearing conducted pursuant to the provisions of subsection (b)"). The *Brewer* court clarified that modification was not guaranteed even if the initial procedural requirement in section 610(a) was met; the standard applicable to the modification decision itself was located in section 610(b). *Id.*

¶ 25        When the General Assembly amended Illinois law in 2016 to replace "child custody" with "allocation of parental responsibilities," it repealed section 610 of the Act and added a new modification statute—section 610.5 (750 ILCS 5/610.5 (West 2016)). Initially, section 610.5 provided, in relevant part, that

> "(a) Unless by stipulation of the parties or except as
> provided in subsection (b) of this Section or Section 603.10 of this
> Act, no motion to modify an order allocating parental
> responsibilities may be made earlier than 2 years after its date,
> unless the court permits it to be made on the basis of affidavits that
> there is reason to believe the child's present environment may
> endanger seriously his or her mental, moral, or physical health or
> significantly impair the child's emotional development.
>
> (b) A motion to modify an order allocating parental
> responsibilities may be made at any time by a party who has been
> informed of the existence of facts requiring notice to be given
> under Section 609.5 of this Act.
>
> (c) Except in a case concerning the modification of any
> restriction of parental responsibilities under Section 603.10, the

10

court shall modify a parenting plan or allocation judgment when necessary to serve the child's best interests if the court finds, by a preponderance of the evidence, that on the basis of facts that have arisen since the entry of the existing parenting plan or allocation judgment or were not anticipated therein, a substantial change has occurred in the circumstances of the child or of either parent and that a modification is necessary to serve the child's best interests."

750 ILCS 5/610.5(a) to (c) (West Supp. 2015).

Clearly, the General Assembly sought to retain the old statute's gateway function from subsection (a) and the general standard applicable to modification decisions from subsection (b), even though the latter was moved to subsection (c) in the new statute. In addition, it is noteworthy that subsection (c) referred in part to modifications of "parenting plan[s]" (*id.* § 610.5(c)), which the Act defined—and continues to define—as including written agreements allocating parenting time (*id.* § 600(f)).

¶ 26    The new modification statute was amended again shortly thereafter. As of January 1, 2017, section 610.5 provides, in relevant part, that

"(a) Unless by stipulation of the parties or except as provided in Section 603.10 of this Act, no motion to modify an order allocating parental decision-making responsibilities, not including parenting time, may be made earlier than 2 years after its date, unless the court permits it to be made on the basis of affidavits that there is reason to believe the child's present environment may endanger seriously his or her mental, moral, or

11

physical health or significantly impair the child's emotional development. Parenting time may be modified at any time, without a showing of serious endangerment, upon a showing of changed circumstances that necessitates modification to serve the best interests of the child.

(b) (Blank).

(c) Except in a case concerning the modification of any restriction of parental responsibilities under Section 603.10, the court shall modify a parenting plan or allocation judgment when necessary to serve the child's best interests if the court finds, by a preponderance of the evidence, that on the basis of facts that have arisen since the entry of the existing parenting plan or allocation judgment or were not anticipated therein, a substantial change has occurred in the circumstances of the child or of either parent and that a modification is necessary to serve the child's best interests." 750 ILCS 5/610.5(a) to (c) (West 2016).

¶ 27    The changes made by the General Assembly to subsection (a) evince an intent for that subsection to remain as a gateway to an evidentiary hearing, in line with the construction announced in our supreme court's decision in *Brewer*. Notably, "after [the supreme court] has construed a statute, that construction becomes, in effect, a part of the statute and any change in interpretation can be effected by the General Assembly if it desires so to do." (Internal quotation marks omitted.) *Village of Vernon Hills v. Heelan*, 2015 IL 118170, ¶ 19. Subsection (a) as amended retained the initial procedural requirement of serious endangerment for all modification

12

requests made within two years of an allocation but altered the procedural requirement for parenting-time modification requests. 750 ILCS 5/610.5(a) (West 2016). For those requests, and only those requests, no matter whether the request was made within two years of the allocation sought to be modified, the General Assembly decreased the initial procedural requirement from a showing of serious endangerment to a showing of "changed circumstances." *Id.* There is nothing in the amended version of section 610.5 to indicate that the General Assembly sought to alter the *Brewer* interpretation of subsection (a) as a gateway to an evidentiary hearing. See *Heelan*, 2015 IL 118170, ¶ 19 (holding that, "[w]hen a court construes a statute and the legislature does not amend it to supersede that judicial gloss, we presume that the legislature has acquiesced in the court's exposition of legislative intent").

¶ 28        Furthermore, *Brewer* interpreted subsection (c)'s predecessor as containing the legal standard for evidentiary hearings on modification requests (*Brewer*, 183 Ill. 2d at 554-56), and when the General Assembly amended section 610.5, it did not amend subsection (c) (750 ILCS 5/610.5(c) (West 2016)). Our supreme court has long held that

> "[w]hen the General Assembly amends a statute and no change is made in parts of it, the repeated portions, either literally or substantially, are regarded as a continuation of the existing law and not as the enactment of a new law upon the subject. [Citations.] It should also be borne in mind that amendments are to be construed together with the original act to which they relate as constituting one law, and also together with other statutes on the same subject, as part of a coherent system of legislation; and this rule is applicable where a later independent statute amends a

13

former statute by implication. The provisions of the amendatory and amended acts are to be harmonized, if possible, so as to give effect to each, and leave no clause of either inoperative." *Klemme v. Drainage District No. 5 of the Township of Crete*, 380 Ill. 221, 224 (1942).

As previously mentioned, the modification of a "parenting plan" referenced in subsection (c) continued to include written agreements that allocated parenting time. 750 ILCS 5/600(f), 610.5(c) (West 2016). If the General Assembly had intended to create a new legal standard in subsection (a) for deciding parenting-time modification requests, it would have had to amend subsection (c). See *Klemme*, 380 Ill. at 224.

¶ 29     In this case, Chris sought the modification of a parenting-time allocation. The circuit court permitted Chris to bring that petition, which later proceeded to an evidentiary hearing. The applicable legal standard at the evidentiary hearing was the standard appearing in section 610.5(c). *Cf. Brewer*, 183 Ill. 2d at 554-56 (holding that section 610.5(c)'s predecessor, section 610(b), contained the applicable legal standard for determining whether a modification request should be granted). For the foregoing reasons, we reject Chris's argument that section 610.5(a) contained the legal standard applicable to his request for modification of the parenting-time allocation.

¶ 30     Next, Chris asserts that, even if the circuit court applied the correct legal standard, its denial of his modification petition constituted an abuse of discretion because a substantial change in circumstances had occurred in that the children were older and had expressed the desire to spend more time with him.

14

¶ 31    We first note that Chris's claim is incorrect that the appropriate standard of review is abuse of discretion. The circuit court found that no substantial change in circumstances had occurred. The question of whether a substantial change in circumstances has occurred is a factual question that we review under the manifest-weight-of-the-evidence standard. See *In re Marriage of Wengielnik*, 2020 IL App (3d) 180533, ¶ 12 (holding that "[w]hen the trial court finds that no substantial change in circumstances has occurred, we review whether the manifest weight of the evidence supports the finding" (citing *In re Marriage of Barnard*, 283 Ill. App. 3d 366, 370 (1996))).

¶ 32    Next, we note that Chris has cited no law to support his claim that a substantial change in circumstances occurs when children age and express a desire to spend more time with the noncustodial parent. He does attempt to analogize this case to *In re Marriage of Kessler*, 110 Ill. App. 3d 61 (1982), claiming that, "[e]ven in the context of child support modification, this Court has held that a change in circumstances occurs merely because the children are older." First, Chris's pinpoint citation is page 65 of *Kessler*; that page is from the background section of the decision and not from the court's legal analysis. Second, even if Chris's pinpoint citation was merely a scrivener's error, it is clear that *Kessler* does not blanketly hold that "a change in circumstances occurs merely because the children are older." When the *Kessler* court affirmed the circuit court's decision to increase the respondent's child support obligation, the court's change-in-circumstances analysis included far more than just the aging of the children:

> "In the present case, the court predicated its determination
> upon evidence that respondent is a practicing attorney and a
> partner in a law firm; that he earned income which has
> substantially increased since the entry of the original judgment in

15

1977; that the cost of living had increased greatly; that the minor children are now of school age and are no longer preschoolers; that although the evidence showed that petitioner's expense list was 'somewhat inflated,' the children's needs and activities had in fact greatly increased since the time of judgment." *Id.* at 73.

Moreover, the aging of children is a far more relevant consideration in the child-support modification context than in the parenting-time modification context because expenses increase for children as they age. Even if Chris were correct that "a change in circumstances occurs merely because the children are older" in the child-support modification context, the parenting-time modification context is not sufficiently analogous for that conclusion to be appropriately drawn in this case.

¶ 33        This is not to say that the aging of children or their expressed wishes could never constitute a substantial change in circumstances. When a court determines whether a substantial change in circumstances has occurred, Illinois law requires the court to consider the totality of the circumstances. *In re Marriage of Davis*, 341 Ill. App. 3d 356, 359 (2003); see also *Kessler*, 110 Ill. App. 3d at 73. We will not blanketly hold that a substantial change in circumstances either does or does not occur when a certain number of years have passed since the entry of the parenting-time allocation or when the children have expressed a desire for more equal parenting time. See, *e.g.*, *In re Marriage of Andersen*, 236 Ill. App. 3d 679, 684 (1992) (noting that "a custodial arrangement that may be in the best interest of a seven-year-old child may not be in the best interest of a 14-year-old boy"). Rather, we hold that if such circumstances are relevant to the determination of whether a substantial change in circumstances has occurred, those circumstances must be considered in their context. See, *e.g.*, *Davis*, 341 Ill. App. 3d at 360

16

(noting that, "[i]n some cases, the differences between the needs of a small child and the needs of that same child as an adolescent can be sufficient to constitute a change in circumstances").

¶ 34    The fatal flaw in Chris's argument is that he points to no evidence to show that in *this* particular case, the aging of the children and their expressed wishes for more equal parenting time constituted a substantial change in circumstances. In this regard, we note that section 610.5(c) of the modification statute requires a substantial change in circumstances to be based on facts that "were not anticipated" in the entry of the existing parenting plan. 750 ILCS 5/610.5(c) (West 2016). Here, K.T. was six years old and P.T. nine years old when the dissolution order was entered. They were 11 and 13, respectively, when Chris filed his parenting-time modification request. Without more, there is nothing to suggest that the aging of the children in this case was anything other than a fact anticipated in the entry of the initial allocation in 2013.

¶ 35    Further, the well-documented animosity between the parties was the reason why the circuit court refused to institute equal parenting time in the initial allocation in 2013. As this court has recently noted, "courts have traditionally viewed 50/50 joint parenting time with caution. [Citation.] In cases where the evidence clearly showed that parents had too much animosity to be able to cooperate, 50/50 arrangements have been set aside. [Citations.]" *In re Marriage of Virgin*, 2021 IL App (3d) 190650, ¶ 47. Even though both children in this case expressed a desire for more time with Chris, he has not even attempted to demonstrate, for example, that the animosity between him and Janelle had decreased to the extent that a 50/50 parenting time schedule was appropriate. Without more than the children's desire for a more equal visitation schedule, there is no basis for this court to overturn the circuit court's ruling.

¶ 36    Under the circumstances of this case, we hold that the circuit court's finding that no substantial change in circumstances had occurred was supported by the manifest weight of the evidence.

¶ 37                    B. Modification of the Holiday Schedule

¶ 38    Chris's second argument on appeal is that the circuit court erred when it modified the parties' parenting time on holidays. He alleges that the modification was neither in the children's best interests nor "minor."

¶ 39    Initially, we note that the circuit court ordered this modification under section 610.5(e), which provides that the circuit court can modify a parenting plan in the absence of changed circumstances if the modification (1) is in the child's best interests and (2) one of four enumerated circumstances is present. 750 ILCS 5/610.5(e) (West 2016). In its order, the circuit court did not discuss or even mention any of the four circumstances enumerated in section 610.5(e). While we find it troubling that the circuit court did not state under which circumstance this case fell, we also note the following:

> "[T]he reasons given for a judgment or order are not
> material if the judgment or order itself is correct. It is the judgment
> that is on appeal to a court of review and not what else may have
> been said by the lower court. The reviewing court need not accept
> the reasons given by the circuit court for its judgment. Rather, a
> reviewing court can uphold the decision of the circuit court on any
> grounds which are called for by the record regardless of whether
> the circuit court relied on the grounds and regardless of whether

18

the circuit court's reasoning was correct." *Ultsch v. Illinois Municipal Retirement Fund*, 226 Ill. 2d 169, 192 (2007). In this case, only one of the four circumstances from section 610.5(e) could be present in this case—subsection (e)(2), which requires that "the modification constitutes a minor modification in the parenting plan or allocation judgment." 750 ILCS 5/610.5(e)(2) (West 2016). Accordingly, we will analyze this issue under section 610.5(e)(2).

¶ 40    When determining whether a modification to parenting time under section 610.5(e) is in the children's best interests, courts must consider all relevant factors, including:

"(1) the wishes of each parent seeking parenting time;

(2) the wishes of the child, taking into account the child's maturity and ability to express reasoned and independent preferences as to parenting time;

(3) the amount of time each parent spent performing caretaking functions with respect to the child in the 24 months preceding the filing of any petition for allocation of parental responsibilities or, if the child is under 2 years of age, since the child's birth;

(4) any prior agreement or course of conduct between the parents relating to caretaking functions with respect to the child;

(5) the interaction and interrelationship of the child with his or her parents and siblings and with any other person who may significantly affect the child's best interests;

19

(6) the child's adjustment to his or her home, school, and community;

(7) the mental and physical health of all individuals involved;

(8) the child's needs;

(9) the distance between the parents' residences, the cost and difficulty of transporting the child, each parent's and the child's daily schedules, and the ability of the parents to cooperate in the arrangement;

(10) whether a restriction on parenting time is appropriate;

(11) the physical violence or threat of physical violence by the child's parent directed against the child or other member of the child's household;

(12) the willingness and ability of each parent to place the needs of the child ahead of his or her own needs;

(13) the willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the other parent and the child;

(14) the occurrence of abuse against the child or other member of the child's household;

(15) whether one of the parents is a convicted sex offender or lives with a convicted sex offender and, if so, the exact nature of the offense and what if any treatment the offender has successfully

participated in; the parties are entitled to a hearing on the issues raised in this paragraph (15);

> (16) the terms of a parent's military family-care plan that a parent must complete before deployment if a parent is a member of the United States Armed Forces who is being deployed; and

> (17) any other relevant factor that the court expressly finds to be relevant." *Id.* § 602.7(b).

¶ 41 Under section 610.5(e)(2), if no substantial change in circumstances has occurred but the proposed modification has been found to be in a child's best interests, the circuit court can order the modification if it constitutes a "minor" modification. *Id.* § 610.5(e)(2). What constitutes a "minor" modification is not defined in the statutory scheme. See *id.* §§ 600 to 610.5. "We are *** directed by case law in the State of Illinois to apply to words appearing in legislative enactments their common dictionary meaning or commonly accepted use unless otherwise defined by the legislature, the specific meaning being determined by the object sought to be accomplished by the statute in which they are used." *Bowes v. City of Chicago*, 3 Ill. 2d 175, 201 (1954). The dictionary definition of "minor" is "inferior in importance, size, or degree: comparatively unimportant." Webster's Ninth New Collegiate Dictionary 757 (1990).

¶ 42 We review a circuit court's modification decision under the manifest-weight-of-the-evidence standard. *In re Marriage of Bates*, 212 Ill. 2d 489, 515 (2004). A decision is against the manifest weight of the evidence "only if the opposite conclusion is clearly apparent or the decision is unreasonable, arbitrary, or not based on the evidence." *In re Keyon R.*, 2017 IL App (2d) 160657, ¶ 16.

21

¶ 43     Our review of the record reveals no basis to support the circuit court's modification of the parties' holiday parenting-time schedule. Holidays are always addressed separately from normal visitation in parenting plans because those days are important. While it may be possible to modify holiday parenting time in a "minor" fashion, such circumstances are not present in this case. Here, the court eliminated visitation on Veteran's Day, Columbus Day, and the Saturday and Sunday following Thanksgiving, which had the effect of reducing Chris's parenting time because Janelle is the parent who had the children by default on those days. There is nothing in the record to support a finding that it was in the children's best interests to reduce Chris's parenting time. Moreover, while we acknowledge that split visitation on Christmas Eve and Christmas Day, as well as on New Year's Eve and New Year's Day, could potentially create logistical difficulties for the parties, we are also mindful that it is a significant change for the children to go from seeing both parents every Christmas and New Year's holiday to seeing only one parent on those holidays. Under these circumstances, we hold that the modifications made by the circuit court to the parties' holiday parenting-time schedule were not minor and that the court's judgment in that regard was against the manifest weight of the evidence.

¶ 44                    C. Modification of Certain Rules Pertaining to the Parties

¶ 45     Chris next argues that the circuit court erred by granting Janelle's request for the elimination of the Three-Appointment Rule, the 10-foot Rule, and the prohibition on Janelle entering onto Chris's property. He asserts that these modifications were neither in the best interests of the children nor "minor."

¶ 46     We note that the parties are incorrect regarding the law applicable to these rules. Each of these rules is properly considered to be a *restriction* on parental responsibilities, which is governed by section 603.10 of the Act. See 750 ILCS 5/603.10 (West 2016). In relevant part,

22

section 603.10(a)(1) permits a circuit court to impose "a reduction, elimination, or other adjustment of the parent's decision-making responsibilities." *Id.* § 603.10(a)(1). The Three-Appointment Rule is properly considered a section 603.10(a)(1) restriction on Janelle's decision-making responsibilities related to the children's health care. *Id.* Additionally, section 603.10(a)(4) permits a circuit court to impose a restriction "restraining a parent's *** proximity to the other parent." *Id.* § 603.10(a)(4). The 10-foot Rule and the prohibition on Janelle entering onto Chris's property are both properly considered section 603.10(a)(4) restrictions. *Id.*

¶ 47    The significance of these classifications is that modifications of such restrictions are governed by section 603.10(b), not section 610.5. Section 603.10(b) provides:

> "(b) The court may modify an order restricting parental responsibilities if, after a hearing, the court finds by a preponderance of the evidence that a modification is in the child's best interests based on (i) a change of circumstances that occurred after the entry of an order restricting parental responsibilities; or (ii) conduct of which the court was previously unaware that seriously endangers the child. In determining whether to modify an order under this subsection, the court must consider factors that include, but need not be limited to, the following:
>
>> (1) abuse, neglect, or abandonment of the child;
>>
>> (2) abusing or allowing abuse of another person that had an impact upon the child;

23

(3) use of drugs, alcohol, or any other substance in a

way that interferes with the parent's ability to perform

caretaking functions with respect to the child; and

(4) persistent continuing interference with the other

parent's access to the child, except for actions taken with a

reasonable, good-faith belief that they are necessary to

protect the child's safety pending adjudication of the facts

underlying that belief, provided that the interfering parent

initiates a proceeding to determine those facts as soon as

practicable." *Id.* § 603.10(b).

¶ 48    Significantly, neither of the two requirements in section 603.10(b) was met in this case. First, the evidence presented was essentially that Janelle merely found the rules at issue in this case to be inconvenient to her. We are aware of no Illinois case that has found a change in circumstances related to a restriction simply because that restriction was inconvenient to one of the parents; indeed, the rules at issue in this case were inconvenient to Janelle from their inception. Accordingly, the record in this case does not support a finding that these rules could be modified under 603.10(b) due to a change in circumstances. *Id.* Second, there is nothing in the record to suggest that "conduct of which the court was previously unaware that seriously endangers the child" was present in this case. *Id.* Accordingly, because modifications of the Three-Appointment Rule, the 10-foot Rule, and the prohibition on Janelle entering onto Chris's property were not proper under section 603.10(b), we hold that the circuit court erred when it eliminated them.

24

¶ 49    For the foregoing reasons, we hold that the circuit court (1) did not err when it denied Chris's petition to modify the parenting-time allocation; (2) erred when it modified the parties' parenting time on holidays; and (3) erred when it eliminated the Three-Appointment Rule, the 10-foot Rule, and the prohibition on Janelle entering onto Chris's property.

¶ 50                          III. CONCLUSION

¶ 51    For the foregoing reasons, the judgment of the circuit court of Rock Island County is affirmed in part and reversed in part.

¶ 52    Affirmed in part and reversed in part.

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Rock Island County, No. 11-D-376; the Hon. Kathleen Mesich, Judge, presiding. |
| **Attorneys for Appellant:** | Michael G. DiDomenico, of Lake Toback DiDomenico, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Jennifer Olsen, of Davenport, Iowa, for appellee. |