**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2023 IL App (3d) 220163-U

Order filed August 9, 2023

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2023

| | | |
|---|---|---|
| *In re* MARRIAGE OF KATIE BASTIAN, | ) ) ) | Appeal from the Circuit Court of the 18th Judicial Circuit, Du Page County, Illinois. |
| Petitioner-Appellant, | ) ) ) | Appeal No. 3-22-0163 Circuit No. 18-D-555 |
| and | ) ) | |
| RICHARD BASTIAN, | ) ) | Honorable Timothy J. McJoynt, |
| Respondent-Appellee. | ) ) | Judge, Presiding. |

JUSTICE BRENNAN delivered the judgment of the court.
Presiding Justice Holdridge and Justice Hettel concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The trial court did not err when it denied the mother's motion to dismiss the father's petition to modify parenting time. The court did not abuse its discretion when it increased parenting time for the father, nor was its decision against the manifest weight of the evidence. Affirmed.

¶ 2    The parties, Katie Bastian and Richard Bastian, married and had two children together before petitioning for dissolution of their marriage. They entered into a marital settlement agreement (MSA) that allocated parental responsibilities and was incorporated into the judgment of dissolution. Richard later filed a petition to modify parenting time, and Katie filed a motion to

dismiss the petition. The trial court denied Katie's motion to dismiss and, after a hearing, granted Richard's petition and increased his parenting time. For the reasons that follow, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4        Katie and Richard married in 2011. They had two children together: M.B. (now age 9) and C.B. (now age 5). Katie petitioned for dissolution of marriage in March 2018. On April 26, 2019, the parties entered into a MSA, which was expressly incorporated into the trial court's May 15, 2019, judgment of dissolution.

¶ 5        The sole issues on appeal involve the parties' respective parenting time. The MSA outlined the parties' parenting time as follows:

        "1. [Richard] shall have parenting time every other weekend from Friday at 5:30 pm until Sunday at 5:30 pm, subject to the terms of the letter agreement.

        2. [Richard] shall have weekday parenting time with the children on two evenings a week, on Mondays and Wednesdays, from 6:00 p.m. to 7:30 p.m. [Richard] shall notify [Katie] that day, in advance, as to whether he can exercise parenting time.

        3. [Katie] shall have parenting time at all other times that [Richard] does not have parenting time."

Richard filed a January 29, 2020, verified petition to modify parenting time in which he requested equal (50-50) parenting time. This petition was resolved by an August 27, 2020, agreed order, which modified Richard's weekday parenting time as follows: on Mondays and Wednesdays, Richard's parenting time would now be from 5 p.m. to 7 p.m., and Richard's second weekend of every month would include overnight parenting time (permitting him to drop off the children at school on Monday morning).

¶ 6        The MSA set forth a holiday parenting time schedule, allocating roughly equivalent

2

holidays to each party and alternating holidays (except Mother's Day and Father's Day) in odd and even years. It also set forth a winter break schedule which gave Katie parenting time from "6:00 p.m. on the last day of school until December 25 at 10:00 a.m." and from "December 30 at 10:00 a.m. until school resumes," while giving Richard parenting time from "10:00 a.m. on December 25 to December 30 at 10:00 a.m."

¶ 7      The MSA contemplated the children's participation in extracurricular activities, providing that "[Katie] and [Richard], after considering the children's aptitudes and preferences, shall jointly make all Major Decisions relating to their lessons and extracurricular activities," subject to specified terms and conditions. The parties agreed to give substantial weight to the children's aptitudes and expressed preferences, to notify the other upon receipt of information about scheduling and instructors, that each parent shall be welcome to attend all extracurricular activities, and that each parent's emergency contact information would be provided for any activity. The MSA further provided that

> "[t]he parties agree and acknowledge that certain team/group activities or lessons in which the children may participate are likely to have practices, games or other scheduled sessions which may fall during both parents' parenting time. With that understanding, each parent will exercise his/her best efforts to have the children promptly attend their scheduled activities."

In addition, although the MSA provided that "[t]he parties agree that make-up parenting time is not a right of any parent," it also provided that "the parties also recognize that good faith flexibility on the part of both parties and [the children] will likely be required from time to time." The August 27, 2020, agreed order did not modify the MSA's provisions for extracurricular activities.

¶ 8        Finally, the MSA contained a mediation provision. If a dispute arose, the parties agreed to "make reasonable attempts to negotiate a settlement of the dispute," to submit any complaint to the other party in writing, and to reply to any complaint in writing "when practicable." Further, the parties agreed that if they could not resolve a dispute within seven days, they would participate in non-binding mediation, "except as to matters which require immediate attention."

¶ 9        On September 22, 2021, Richard filed a petition to modify parenting time pursuant to sections 610.5(a) and 610.5(e)(2) of the Illinois Marriage and Dissolution of Marriage Act (IMDMA). 750 ILCS 5/610.5(a), (e)(2). The petition asserted that (1) due to COVID-19 restrictions, Richard was unable to attend the children's swimming classes (from 6 p.m. to 7 p.m.) when they fell on his weekdays, (2) M.B. had soccer practice every Monday from 5 p.m. to 6 p.m. and Katie was the coach, and (3) Richard had "little to no parenting time during the week if swimming fell on his days." He claimed his winter break parenting time consisted of only five days while Katie received the remaining days, and complained that the MSA did not account for federal holidays, on which Richard did not work. He argued it was in the best interests of the children that his weekday parenting time be increased to 4 p.m. to 8 p.m. and that he be awarded half of winter break parenting time and half the parenting time on federal holidays. Finally, he asserted that Katie declined to mediate his modification request.

¶ 10        Katie filed a motion to strike and dismiss Richard's petition to modify parenting time pursuant to section 2-615 of the Illinois Code of Civil Procedure (Code). 735 ILCS 5/2-615(a) (West 2020). In relevant part, she argued that (1) section 610.5(a) of the IMDMA was "not applicable to the facts [pled]" in Richard's petition, (2) Richard failed to allege a substantial change of circumstances or, alternatively, request a "minor modification" as required by section

4

610.5(e)(2) of the IMDMA, and (3) Richard failed to plead how his requested relief was in the best interests of the children.

¶ 11   Richard filed a response to Katie's motion. Rebutting Katie's contention that section 610.5(a) did not apply to the facts pled, Richard stated that he sought modification of his parenting time because "his current schedule does not serve the best interests of the minor children." Further, he clarified that "he has requested make up parenting time because the minor children have extracurricular activities scheduled by KATIE during his parenting time, which he is unable to attend due to Covid-19 restrictions."

¶ 12   The trial court conducted a hearing on Katie's motion to dismiss, which it denied in a written order "[f]or the reasons stated on the record." Following argument, the court opined that "[t]here is no change of circumstances alleged," that neither pleading "really address[ed]" the best interests of the children, and that Richard's pleading requested relief the court "d[id]n't think [was] minor at all." The court further explained,

> "Now, in general the argument should be the more time with dad, good for the kids. I get that. I didn't hear that today, but I think I can presume that based on my experiences.
>
> But the point is this further tinkering, is that in the best interest of the kids? Probably not."

The court denied Katie's motion to dismiss, however, stating,

> "But having said all of that, there is, I think, barely and, I mean, barely a substantial change of facts pled here with regards to swimming and soccer during the week. Therefore, I think it does state a cause of action, and I say barely. I am going to deny the motion."

Katie filed a motion to reconsider, which the court denied. The court set Richard's petition to modify parenting time for hearing on March 9, 2022.

¶ 13    At the March 9, 2022, hearing, Richard testified as follows. He began working from home full-time in October 2021 and did not work on federal holidays. At the time of the August 2020 agreed modification of Richard's parenting time (which specified his parenting time would occur on Mondays and Wednesdays), the children had no activities that fell on Mondays or Wednesdays.

¶ 14    In September 2020, M.B. began a new soccer season. Practices were held on Mondays from 5 p.m. to 6 p.m., and Katie was the coach. Richard, who coached softball for the same park district, understood that coaches were allowed to submit preferred times for holding practices.

¶ 15    In the summer of 2021, M.B. began a swimming program, which included practices and meets. Meets took place on Wednesdays from 5 p.m. to 8 or 8:30 p.m. Richard did not have any parenting time with M.B. on Wednesdays during the summer of 2021. In the fall, M.B. began a new swimming program in which practices were held on various days during the week from 6 p.m. to 7 p.m. Some weeks included Mondays, and some included Wednesdays.

¶ 16    M.B. continued soccer in the fall of 2021, with practices again on Mondays from 5 p.m. to 6 p.m. Katie would take M.B. to soccer. If M.B. had swimming on Monday or Wednesday, Katie's parents or another swimmer's parent would pick her up. Katie would not allow Richard to pick up M.B. from swimming because it would cause him to drop off C.B. after 7 p.m. Katie refused to allow Richard to pick the children up sooner to have quality time before their events. M.B. also had "CCD" on Wednesdays, ending at 5:15 p.m., and Katie refused to allow Richard to drop her off to that event. Further, on one occasion, M.B. attended Girl Scouts on one of Richard's nights, limiting him to only 30 minutes with M.B., and Katie refused Richard's request to make up the time he missed.

¶ 17    Richard anticipated M.B. would continue participating in swimming with the same schedule in the future. M.B. also participated in softball and a dance program. He would take her

to events related to these activities during his weekend parenting time. He had no issue with activities sometimes occurring during his parenting time, but he wished to protect his time with the children and stated that C.B. would soon begin participating as well. Richard had the ability to pick the children up earlier on his days if he could.

¶ 18    Regarding winter break parenting time, the agreed schedule resulted in Katie having five out of six weekends. Richard asserted this was "disproportionate" and would continue in the future.

¶ 19    Richard also testified that, at the time of the August 2020 agreed modification of his parenting time, M.B.'s sports were on hold due to the COVID-19 pandemic, and explained how the children's winter break parenting time schedule favored Katie. Finally, Richard addressed the best interests of the children:

> "Q. Why do you believe it's in the best interests of your girls to have this midweek parenting time with you?
>
> A. Again, I think it's healthy for them to have as much time as they can with me. I understand that Katie is a great mom and she's doing what she can, but I'm a great dad too and the girls deserve to have, you know, this time with me. And I hope that throughout this process we find a way to come together and coparent and move forward positively for the girls' sake."

¶ 20    The trial court made oral findings at the next court date. Relevant here, the court opined that, at times, both parties failed to demonstrate good-faith flexibility. The court noted that Richard could have sought more federal holidays in the original MSA or in reaching the August 27, 2020, agreed order but failed to do so. The court explained that holidays are rarely addressed in MSAs because "a simple direct schedule with less hand-offs and less exchanges is generally in the children's best interest."

7

¶ 21    The trial court found a change of circumstances in that "the oldest[] child's activities have increased and will increase more, and those activities have increased since the entry of the last order." It further observed, "the issue of whether or not this modification that [Richard] is seeking is minor or not becomes moot. I find there's been change." After noting that both parents wanted to increase the activities for the children, the court continued:

> "The difficulty or the disconnect here is as these activities are engaged by mostly the older child, but both children, the parties aren't able to come up with solutions to resolve the parenting challenges that activities like this cause both parties. It clearly disrupts parenting time for both parents.
>
> Ms. Bastian points out that Mr. Bastian can attend the extracurricular activities on his time, and that is true, but Mr. Bastian also testified correctly that it really—I should say affects his alone time with the girls, which it does.
>
> The Christmas schedule in the allocation agreement has fortuitously apparently favored Mrs. Bastian, with her having that first time period, and that somehow she's getting more time over the holidays than Mr. Bastian. One could say that's the deal both parties made, but that's not the test. The test is what's in the best interest of these girls.
>
> * * *
>
> The Court finds it is in the children's best interest to have more time with their father. The Court finds it is appropriate to correct the Christmas parenting schedule if it limits one party's times, albeit accidentally and not by design.
>
> The Court finds it is not in the children's best interest to increase exchanges for additional holidays which change and may not even be providing for a day off from school. More frequent exchanges will cause confusion and instability."

8

Accordingly, the court ordered that Richard's Monday and Wednesday parenting time be expanded to 4 p.m. to 8 p.m. (an increase from 5 p.m. to 7 p.m.) and that Richard's winter break parenting time be expanded such that the parties alternate the first and second periods of winter break. In alternating years, one party would have parenting time from the last day of school before winter break until Christmas Day, while the other party would have parenting time from Christmas Day until December 30. Katie would retain the remainder of winter break parenting time in all years.

¶ 22   Katie timely appealed.

¶ 23                     II. ANALYSIS

¶ 24   Katie first claims the trial court erred when it denied her motion to strike and dismiss Richard's petition to modify parenting time (in its entirety) pursuant to section 2-615 of the Code. A section 2-615 motion to dismiss tests the legal sufficiency of a petition based on defects apparent on its face. 735 ILCS 5/2-615(a) (West 2020); *In re Marriage of Jones*, 2022 IL App (5th) 210104, ¶ 17. In reviewing the sufficiency of a petition, we construe the allegations in the light most favorable to the petitioner and accept as true all well-pleaded facts and all reasonable inferences from those facts. *In re Marriage of Reicher*, 2021 IL App (2d) 200454, ¶ 36. We review the trial court's ruling on a section 2-615 motion to dismiss *de novo*. *Id.* ¶ 37.

¶ 25   Katie argues Richard's petition was legally insufficient to grant relief under section 610.5 of the IMDMA because Richard did not adequately plead that a change in circumstances requiring modification occurred or that modification was in the best interests of the children. She argues the children's involvement in extracurricular activities was not a changed circumstance because Richard had previously filed a petition to modify parenting time based on their involvement in extracurricular activities. Finally, she argues that Richard could not establish a change in circumstances based on the children's participation in extracurricular activities because both

9

parties agreed to such participation.

¶ 26     We disagree. Richard cited section 610.5(a) of the IMDMA in his petition. Section 610.5(a) of the IMDMA provides that "[p]arenting time may be modified at any time*** upon a showing of changed circumstances that necessitates modification to serve the best interests of the child." 750 ILCS 5/610.5(a) (West 2020). Richard's petition alleged (1) the children were enrolled in a swimming class which takes place from 6 p.m. to 7 p.m., five days per week, on a rotating schedule, (2) M.B. had soccer practice every Monday from 5 p.m. to 6 p.m., (3) Richard was unable to attend the swimming classes due to COVID-19 restrictions, (4) Katie was a coach for both the swimming class and soccer practice, and (5) the extracurricular activities interfered with his parenting time. In his response to the motion to strike, Richard stated that his then-current schedule did not serve the best interest of the children and that he sought a modification because he was unable to attend extracurricular activities during his scheduled parenting time due to COVID-19 restrictions. At the hearing on the motion to strike and dismiss Richard's petition, moreover, counsel for Richard further stated that both extracurricular activities (soccer and swimming) were cancelled at the beginning of the COVID-19 pandemic and restarted subsequent to the court's August 2020 order.

¶ 27     Accordingly, we conclude the petition alleged changed circumstances—Katie enrolled the children in a new extracurricular activity (swimming classes) scheduled during Richard's parenting time that he could not attend due to COVID-19 restrictions—and implicitly alleged that modification would serve the best interests of the children by restoring Richard's *de facto* parenting time that the parties mutually agreed he would have. While Katie is correct that Richard's earlier petition to modify parenting time alleged that the children's extracurricular activity schedule interfered with his parenting time, the later petition added allegations that he was unable

10

to attend activities due to COVID-19 restrictions and that Katie had declined Richard's requests for make-up parenting time. The trial court did not err when it denied Katie's motion to strike and dismiss Richard's petition in its entirety.

¶ 28    Moving to the modification of parenting time, Katie first argues Richard failed to satisfy the requirements of section 610.5(e)(2) of the IMDMA, which permits courts to modify parenting time when the modification is minor and serves the best interests of the child, because the modification he sought was not minor. 750 ILCS 5/610.5(e)(2) (West 2020). Second, she argues subsection (a) does not provide a ground for ordering a modification because subsection (a) merely serves as a gateway to an evidentiary hearing (*id.* § 610.5(a); *In re Marriage of Trapkus*, 2022 IL App (3d) 190631, ¶ 27), and the court could not order relief under subsection (c) because Richard failed to provide notice he was seeking modification under subsection (c).

¶ 29    We note first that it appears the trial court granted Richard's petition on the basis of subsection (c) rather than subsection (e)(2) (the court noted that whether the modification sought was minor became "moot"), thus Katie's argument that the modification was not minor is irrelevant. Second, we reject Katie's argument that she had no notice Richard was seeking relief under subsection (c). The language of subsection (a) pertaining to parenting time tracks the language of subsection (c), which provides that

> "the court shall modify a parenting plan or allocation judgment when necessary to serve the child's best interests if the court finds, by a preponderance of the evidence, that on the basis of facts that have arisen since the entry of the existing parenting plan or allocation judgment or were not anticipated therein, a substantial change has occurred in the circumstances of the child or of either parent and that a modification is necessary to serve the child's best interests." 750 ILCS 5/610.5(c) (West 2020).

11

By citing to subsection (a), Richard invoked the ground for relief afforded by subsection (c) and thus apprised Katie that he was seeking the same. Indeed, in her motion to strike and dismiss Richard's petition to modify parenting time, Katie pled that Richard failed to allege a substantial change in circumstances and failed to plead how his requested relief was in the best interests of the children. See *supra* ¶ 10. Her claim that she had no notice of the grounds for relief under subsection (c) is thus without merit.

¶ 30    A trial court's decision to modify parenting time is reviewed for an abuse of discretion and whether it is against the manifest weight of the evidence. *In re Marriage of Wendy S. & George D.*, 2020 IL App (1st) 191661, ¶ 22; see also *In re Custody of Sussenbach*, 108 Ill. 2d 489, 499 (1985) (suggesting the two standards are one and the same). As the trial court is in a superior position to evaluate the evidence and determine the best interests of children, there is a strong and compelling presumption in favor of the trial court's decision in parental responsibilities cases. *Sadler v. Pulliam*, 2022 IL App (5th) 220213, ¶ 42. "A trial court abuses its discretion when its ruling is arbitrary, fanciful, or unreasonable, no reasonable person would take the view adopted by the trial court, or its ruling rests on an error of law." *In re Marriage of Benink*, 2018 IL App (2d) 170175, ¶ 32. "A decision is against the manifest weight of the evidence when an opposite conclusion is apparent or when the court's findings appear to be unreasonable, arbitrary, or not based on evidence." *In re Marriage of Verhines & Hickey*, 2018 IL App (2d) 171034, ¶ 51.

¶ 31    We cannot say the trial court's decision was against the manifest weight of the evidence or an abuse of discretion. The court found that M.B.'s extracurricular activities were increasing, which affected Richard's alone time with the children, and that both parents wanted to increase activities for the children. It also found the parties' MSA "fortuitously" resulted in Katie having more holiday parenting time than Richard.

¶ 32     The court made clear its primary consideration was the best interests of the children. The court found it was "in the children's best interest to have more time with their father" and it was "not in the children's best interest to increase exchanges for additional holidays which change and may not even be providing for a day off from school." Accordingly, the court expanded Richard's midweek parenting time from four to eight hours and gave Richard more winter break parenting time in even years, thereby making winter break parenting time more balanced without adding exchanges. At the same time, the court declined to reallocate federal holidays as Richard requested.

¶ 33     Although the MSA contemplated the children's participation in extracurricular activities and provided that neither party was entitled to make-up parenting time, it also contemplated that the parties would show each other "good faith flexibility." The trial court found that as M.B.'s activities increased, the parties were unable "to come up with solutions to resolve the parenting challenges" caused by the activities. This finding was supported by Richard's testimony that, on multiple occasions, Katie declined to grant him make-up parenting time when activities interfered with his parenting time. Moreover, while the decision allotted Richard a significant amount of additional parenting time during winter break, Katie would retain the majority of parenting time during the rest of the year. The court's decision was based on the evidence presented and did not rest on an error of law. Katie thus fails to overcome the strong and compelling presumption in favor of the trial court's decision.

¶ 34                                    III. CONCLUSION

¶ 35     For the reasons stated, we affirm the judgment of the circuit court of Du Page County.

¶ 36     Affirmed.

13